[No. H034619. Sixth Dist. Aug. 19, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL GUADALUPE LOPEZ, Defendant and Appellant.

## Counsel

Jana Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Sharon Wooden, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ELIA, J.**—Following a jury trial, appellant Daniel Lopez was found guilty of one count of first degree burglary (Pen. Code, §§ 459, 460, subd. (a); count

one), one count of second degree burglary (Pen. Code, §§ 459, 460, subd. (b); count four),[1] one count of using an altered, stolen or counterfeit access card (§ 484g; count five) and one count of petty theft of personal property (§§ 484, 488; count six).[2] As to count one, the jury found true the allegation that a person not an accomplice, namely Deborah Mendicino, was present in the residence during the commission of the offense charged. Subsequently, the court found true an on-bail enhancement.

On July 31, 2009, the court sentenced appellant to six years in state prison consisting of the midterm of four years for count one and two years for count four to be served concurrently and two years for the on-bail enhancement (§ 12022.1, subd. (b)) to be served consecutively. The court imposed a 180-day sentence for each of the two misdemeanor convictions (counts five and six), also to be served concurrently. Appellant filed a timely notice of appeal.

On appeal, appellant challenges, on two different grounds, a jury instruction that was given, challenges the admission of evidence of his prior uncharged acts of misconduct, and contends that the sentence on count six should have been stayed pursuant to section 654. For reasons that follow, we find that the admission of the evidence of prior uncharged acts of misconduct was error and prejudicial, but only as to the first degree burglary charge. Accordingly, we reverse the judgment.

### Facts and Proceedings Below

By way of a second amended information, the Santa Clara County District Attorney charged appellant with one count of first degree burglary (§§ 459, 460; count one), one count of grand theft of personal property (§§ 484, 487, subd. (a); count two), one count of receiving stolen property (§ 496, subd, (a); count three) one count of second degree burglary (§§ 459, 460, subd. (b); count four), one count of using a stolen access card (§§ 484g, 488; count five) and one count of petty theft of personal property (§§ 484, 488; count six).

The evidence adduced at trial was as follows.

### Prior Uncharged Acts of Misconduct

Nancy Ramirez testified that in July 2007 her purse was taken from her boyfriend's green Acura Integra. As a result she lost her California identification card, a bank ATM card and $900.

---

[1] All undesignated section references are to the Penal Code.

[2] The jury found appellant not guilty of one count of grand theft of personal property (count two) and one count of receiving stolen property (count three).

Officer Jason Kilmer testified that on July 19, 2007, he searched appellant and found Nancy Ramirez's California identification and bank cards in appellant's pocket. Appellant had an iPod and a glass punch in his possession.[3] Appellant told him that he took the iPod from a green truck. However, he claimed that he unknowingly obtained Ramirez's property when he purchased a wallet at a garage sale.

Alan Bond testified that in February 2008, his Honda Civic was stolen and appellant did not have permission to take or drive the car. Bond said that he left his car running while he went back into his house to retrieve his wallet. While in his house, he heard his car being taken and went back outside. He made eye contact with the person taking his car, but in court was not able to recognize appellant as that person.

San Jose Police Officer Joseph Kalsbeek saw appellant driving Alan Bond's car. The officer found appellant's cell phone in the stolen vehicle and the keys to the car hidden in appellant's motel room. Appellant told him that he did not realize the car was stolen and he did not know why the keys were hidden in his motel room. Appellant said that he borrowed the vehicle from a friend and did not steal it; and that if he had stolen it he would have worn gloves so as not to leave fingerprints.

*Current Offenses*

*Count Three—Buying or Receiving Stolen Property*

On August 24, 2008, Alfred Ruiz had a disability parking placard stolen from his truck. When officers searched appellant's residence they found a parking placard located inside a purple bag. However, Ruiz was unable to say for certain the parking placard the police located belonged to him. The court admitted into evidence a certified copy of a document from the Department of Motor Vehicles showing that the placard the police discovered in appellant's residence belonged to Ruiz.

*Count One—First Degree Burglary*

Sometime during the night on September 15, 2008, Ellen Smith and her daughter-in-law Deborah Mendicino had their purses stolen from the kitchen of Mendicino's house located on Fontanelle Court in San Jose. Smith heard someone in the kitchen at approximately 4:40 a.m., but assumed that it was Mendicino getting ready for work. Smith's purse contained prescription

---

[3] Officer Kilmer testified that a glass punch is frequently used to break car windows in order to get into a locked car.

sunglasses, $200, and a dark blue RAZR cell phone. Mendicino's purse contained a wallet with cash and credit cards, house and car keys, earrings, a hot pink flashlight in a black canvas holder, and a black RAZR cell phone.

Mendicino called the police when she discovered her purse was missing and then called her bank to cancel her cards. In talking to her bank, she discovered that the card had been used around 5:00 a.m. at a 7-Eleven store for a transaction amounting to $20.71. The bank told Mendicino the identification number of the store at which her card was used; she called several 7-Eleven stores until she was able to locate the correct store, which turned out to be located on Seven Trees Boulevard at Capitol Expressway. One of the workers at the store told her that they had a video of the transaction. Mendicino went to the store and with police officers viewed the videotape.[4]

The 7-Eleven store had a surveillance camera that recorded the stolen credit card transaction. On the tape, appellant could be seen along with another individual who actually used Mendicino's card.

Surinder Singh identified appellant as the man in a red 49ers jacket who was accompanying the person who used Mendicino's card. Singh recognized appellant as a former customer who had not been in the store for several months. Singh felt intimidated by appellant so he wrote down the license plate number of the car that appellant drove away from the 7-Eleven after Mendicino's card was used.

The 7-Eleven store manager testified that the transaction involving Mendicino's credit card occurred at 4:52 a.m. She received from Singh a credit card receipt for a transaction that occurred at 4:53 a.m., which had what she thought was a license plate number on the back.

Officer Ruben Chavez obtained a credit card receipt from the 7-Eleven that had a license plate number written on the back. Using the license plate recognition system in his vehicle, Chavez learned that the plate number on the back of the receipt was associated with appellant and registered to a Joe Fernandez. Chavez viewed a system photo of appellant and thought that he resembled one of the individuals on the 7-Eleven videotape.

Officer Gene Ito went to the home of Joe Fernandez where he located appellant's girlfriend Nicole Fernandez. Nicole gave the officer permission to search her car. Officer Caballo searched the car and found numerous gift

---

[4] Later that same day, at approximately 4:00 p.m., Mendicino was in her front yard when appellant parked a silver Honda across the street in front of a neighbor's house. Mendicino's neighbors were the Romero family and appellant's passenger was a relative of the Romero family. Mendicino called the police, but appellant left before they arrived.

cards from various vendors that were wrapped up "like, a real fat wallet . . . ." There were several other items in the back of the car, but nothing that he could identify as stolen.

Nicole Fernandez testified that she owned a 2005 Honda Accord with her father. In September 2008, appellant had been her boyfriend for about five or six years. Appellant sometimes used her car. She recalled that appellant had her car September 15 through September 16. On September 18 Fernandez was pulled over by the police and her car was searched. She told the police that she recognized some things in the car, but not others. Specifically, she did not recognize a pink flashlight, a handbag and earrings that the police found in the car. Fernandez identified appellant on the videotape from the 7-Eleven.

Officer John Prim testified that when he talked to Fernandez on September 18, 2008, she told him that appellant had her car on September 15 and 16. In addition, on the morning of September 16 as she put her daughter into the backseat of the Honda, in the rear of the car she noticed a pink flashlight on the driver's side on the floorboard. Fernandez told him that she had never seen the flashlight before. Further, Fernandez could not identify wallets that the officer found in the vehicle or gold earrings.

*Count Two—Grand Theft of Personal Property*

In September 2008, Daniel Trevino lived on Fontanelle Place in San Jose. Sometime during the night of September 15, someone stole the radio out of his 1995 BMW. The radio was worth approximately $1,300.

*Count Six—Petty Theft of Personal Property*

Mahalani Sablan lived across the street from Daniel Trevino on Fontanelle Place. Sometime during the night of September 15, 2008, her purse was stolen from her car. She had her identification, credit cards, and cash in her wallet, which was in the purse. The next morning the police arrived and notified her that her credit card had been used. The police allowed her to view a videotape of the transaction, but she was unable to recognize anyone in the video. A $52.55 transaction appeared on her credit card bill.

*Count Five—Using a Stolen Access Card and Count Four—Second Degree Burglary*

The video from the 7-Eleven where Mendicino's card was used showed appellant making a transaction for $52.55 using Sablan's credit card. The transaction took place at 4:53 a.m. on September 16.

Surinder Singh identified appellant as the man in the 49ers jacket who made a purchase for $52.55 using a credit card.

In September 2008, appellant's mother lived with appellant and his brother Manuel on Sebasian Way. The police arrived at her home about 11:00 p.m. on September 16. She testified that her sons shared clothes and she recognized the 49ers jacket as one she had bought for appellant.

*Defense Evidence*

Alex Zumini testified that in September 2008 he was homeless. Zumini knew appellant and his brother Manuel and would go to their house. He knew someone named Romero who lived on Fontanelle Drive and so he would stop by there.

On September 15 at around 2:00 a.m. he saw a garage door open on Fontanelle and went into the residence and looked around. He saw two purses in the kitchen, which he took and then left. Zumini said that he was not wearing a watch so he was only guessing about the time. Zumini testified that he went into a BMW that same night and took a stereo. He did this before he went into the house. After he went into the house, he went to a friend's house on Coyote Road. Zumini said that he went through the purses and then threw them away; he sold the stereo.

Later, he met appellant and asked him for a ride to the 7-Eleven. They drove in a Honda Civic that he had been in before and in which he might have left some of his "things." At the 7-Eleven he bought food with one of the stolen credit cards from the purse and thought he might have given appellant a card, but was not sure. He could not be sure how much time passed before he went to the 7-Eleven, but thought he might have been in the store about 30 minutes before it got light outside. Appellant went with him to the store, but was not with him when he went into the house. Zumini said that he did not think that appellant even knew about him stealing the purses; they had not made a plan to enter the house.

Zumini testified that he was "cited" for the Mendicino house burglary and that the citation indicated that he had confessed to the crime. Zumini stated that he was trying to "take the rap so he [(appellant)] can get off . . . . I'm the one who did it." Zumini was a juvenile at the time of the burglary and he spent three and a half months in juvenile hall. According to Zumini he was acquitted of the charge.

Zumini considered appellant to be a brother and did not want appellant to suffer the consequences of something that he, Zumini, had done. The night of

the residential burglary he was riding his bike and was under the influence of methamphetamine, which was a drug he had been using for three to four years. However, he walked to Fontanelle from Snow Drive.

The jury heard a recording of an interview of Zumini conducted by defense investigator David Jaquez. In the interview, Zumini told Jaquez that when he came out of the house he gave appellant a small purse, which did not contain $200. Zumini testified that he lied to Jaquez about giving appellant the small purse. He said that he was never asked about the theft from the BMW when he was interviewed. Before he took the purses, appellant had told him not to steal. Zumini thought that he went to the 7-Eleven within a half-hour after he stole the purses.[5]

In rebuttal, the prosecutor called David Jaquez to the stand. Jaquez testified that Zumini told him that on September 14, 2008, he had burglarized a residence at Seven Trees Boulevard around 9:00 p.m. and that he was driving with appellant about 7:30 p.m. to a friend's house, but he left that house walking alone. Zumini said that while he was walking he saw a garage door open and had noticed it before he went with appellant to the friend's house. Jaquez recalled that Zumini said the open garage door had been mentioned when he was in the car with appellant. Zumini told Jaquez that he went into the garage and looked around but did not take the purses at first. Subsequently, he came back and entered the kitchen and took the purses. Zumini told Jaquez that after he left the Mendicino house, he saw appellant walking down the driveway of his friend's house, which was located about five houses from the burglarized house.

*Discussion*

I. *CALCRIM No. 376*

a. *Due Process*

The trial court instructed the jury with CALCRIM No. 376 as follows: "If you conclude that the defendant knew he possessed property and you conclude that the property had, in fact, been recently stolen, you may not convict the defendant of burglary based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt then you may conclude that the evidence is sufficient to prove he committed burglary. [¶] The supporting evidence need only be slight and need not be enough by itself

---

[5] When she testified, appellant's mother said that she did know Zumini; he came to her house often. She did not allow him to stay, but because he was homeless, she allowed him to eat with them; sometimes, she found him sleeping outside.

to prove guilt. You may consider how, where, and when, the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of burglary. [¶] Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt."

Appellant contends that the giving of this instruction violated his due process rights because there was no limitation on the source of the stolen property. Appellant argues that pursuant to this instruction the jury could infer guilt of the charged burglary if it found that appellant was in possession of recently stolen property regardless of whether or not it was a product of that burglary and also found slight corroborating evidence of the burglary.

We review de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218 [8 Cal.Rptr.3d 551, 82 P.3d 755].) Our task is to determine whether the trial court " 'fully and fairly instructed on the applicable law.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 [78 Cal.Rptr.3d 186].)

" 'When reviewing a supposedly ambiguous [i.e., potentially misleading] jury instruction, " 'we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' " ' [Citation.]" (*People v. Ayala* (2000) 24 Cal.4th 243, 289 [99 Cal.Rptr.2d 532, 6 P.3d 193].) The same test applies under California law. (*People v. Clair* (1992) 2 Cal.4th 629, 663 [7 Cal.Rptr.2d 564, 828 P.2d 705].) We look to the instructions as a whole and the entire record of the trial, including the arguments of counsel. (*People v. Stone* (2008) 160 Cal.App.4th 323, 331 [72 Cal.Rptr.3d 747]; *People v. Dieguez* (2001) 89 Cal.App.4th 266, 276 [107 Cal.Rptr.2d 160].) We assume that the " ' "jurors [were] intelligent persons and capable of understanding *and correlating* all jury instructions . . . given." [Citation.]' [Citation.]" (*People v. Ramos, supra,* 163 Cal.App.4th at p. 1089.) Instructions should be interpreted, if possible, to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation. (*Id.* at p. 1088.)

Although appellant did not object to the instruction in the trial court,[6] he has not forfeited appellate review because "the issue raised asserts a violation of substantial constitutional rights." (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574 [64 Cal.Rptr.3d 116] (*O'Dell*).)

---

[6] Appellant requested a modification of CALCRIM No. 376, but did not object to the instruction as given.

 Similar to its predecessor, CALJIC No. 2.15,[7] CALCRIM No. 376 is based on a "long-standing rule of law [that] allows a jury to infer guilt of a theft-related crime from the fact a defendant is in possession of recently stolen property when coupled with slight corroboration by other inculpatory circumstances [that] tend to show guilt." (*People v. Barker* (2001) 91 Cal.App.4th 1166, 1173 [111 Cal.Rptr.2d 403].)

Appellant argues that the prosecution introduced evidence that appellant was in possession of recently stolen property, specifically, Sablan's credit card, which he used shortly after the Mendicino burglary. He asserts that of the additional pieces of additional stolen property introduced by the prosecution only one piece—the pink flashlight—was alleged to have been taken during the Mendicino burglary. Accordingly, he argues that since the jury was not provided any guidance as to what evidence of recently stolen property it might consider to prove the Mendicino burglary and was not told that the recently stolen property it could consider to determine guilt of any burglary had to be property stolen during that burglary, the instruction created a substantial risk that appellant would be convicted of the burglary based on evidence from other crimes, which, he argues, is, in effect, that he had a propensity to steal.

Given that when the prosecutor made his opening argument, he pointed out to the jury that in connection with the instruction at issue here, the possession of stolen property that suggested that appellant burglarized the Mendicino home was "the cards" that were used shortly after the burglary, we do not see that there is any reasonable likelihood that the jury interpreted the instruction to apply solely to Sablan's credit card.[8]

---

[7] CALJIC No. 2.15 informed the jury that, before a defendant's guilt could be inferred from his or her possession of recently stolen property, "there must be corroborating evidence tending to prove the defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt." (CALJIC No. 2.15.) As can be seen, CALCRIM No. 376 uses the term "supporting evidence" in place of "corroborating evidence."

[8] The prosecutor told the jury "what is it about the possession of this stolen property that suggests that he, in fact, burglarized the home and took it along with Zumini, because it's fairly clear common sense. We're working together, they got a crime spree they got going out in the middle of the morning when the city sleeps, and what else were they there for? Now, it's Zumini, in talking to Mr. Jaquez, said, using his common sense approach. So the reason why they—they're charging him with this is, because the cards got stolen from the house. The cards were used at 7-Eleven. They got our pictures and they tied us to the house. How did we get the credit cards if we didn't hit the house, you know what I'm saying? Those are the words of Zumini saying, hey, they caught us with the card's [*sic*] they tied us to the house. We're screwed. And that's what this particular instruction says."

With regard to possession, the court instructed the jury that "[a] person does not have to actually hold or touch something to possess it. It is enough if the person has control over it."

■ Moreover, in substance, CALCRIM No. 376 cautions the jury *against* inferring guilt based solely upon a defendant's conscious possession of recently stolen goods. It would be unreasonable and illogical for the jury to construe this instruction to also *permit* it to infer guilt *on a burglary charge*, because a defendant possessed property stolen *during a completely different theft*. " 'We credit jurors with intelligence and common sense [citation] and do not assume that these virtues will abandon them when presented with a court's instructions. [Citations.]' [Citation.]" (*People v. Bragg* (2008) 161 Cal.App.4th 1385, 1396 [75 Cal.Rptr.3d 200].)

Accordingly, we reject this part of appellant's challenge to the giving of CALCRIM No. 376.

b. *Reducing Prosecutor's Burden of Proof*

In a second challenge to the giving of CALCRIM No. 376, appellant contends that instructing the jury with CALCRIM No. 376 violated his rights under the Fifth and Sixth Amendments to the United States Constitution to have each element of the charged offense proven beyond a reasonable doubt, and his right under the Fourteenth Amendment to due process of law. Respectfully, we disagree.

As the court noted in *O'Dell, supra*, 153 Cal.App.4th 1569, CALCRIM No. 376 is substantially similar to the previous pattern jury instruction on this issue, CALJIC No. 2.15. (*O'Dell*, at p. 1574.) Our Supreme Court repeatedly has approved CALJIC No. 2.15 in the face of constitutional challenges. (See, e.g., *People v. Holt* (1997) 15 Cal.4th 619, 676–677 [63 Cal.Rptr.2d 782, 937 P.2d 213]; *People v. Johnson* (1993) 6 Cal.4th 1, 37–38 [23 Cal.Rptr.2d 593, 859 P.2d 673], disapproved on other grounds in *People v. Rogers* (2006) 39 Cal.4th 826, 879 [48 Cal.Rptr.3d 1, 141 P.3d 135].)

Similar to its predecessor, CALCRIM No. 376 prohibits the jury from drawing an inference of guilt based solely on evidence that the appellant knowingly possessed recently stolen property. The jury is allowed, however, to draw an inference of guilt where there is additional supporting evidence, even if the supporting evidence would not be sufficient, by itself, to constitute proof beyond a reasonable doubt. "As long as the corroborating evidence together with the conscious possession could naturally and reasonably support an inference of guilt, and that inference is sufficient to sustain a verdict beyond a reasonable doubt, we discern nothing that lessens the prosecution's burden of proof or implicates a defendant's right to due process." (*People v. Williams* (2000) 79 Cal.App.4th 1157, 1173 [94 Cal.Rptr.2d 727] (*Williams*) [referring to CALJIC No. 2.15].)

In *Barnes v. United States* (1973) 412 U.S. 837 [37 L.Ed.2d 380, 93 S.Ct. 2357], the United States Supreme Court noted that "[f]or centuries courts

have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods." (*Id.* at p. 843.) The *Barnes* court found that such an inference comported with due process if the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt. (*Ibid.*)

Appellant contends the reference to "slight" supporting evidence reduces the prosecution's burden of proof below that of proof beyond a reasonable doubt. Respectfully, we disagree.

With respect to CALCRIM No. 376's predecessor, the appellate court in *People v. Snyder* (2003) 112 Cal.App.4th 1200 [5 Cal.Rptr.3d 711] (*Snyder*), held that "CALJIC No. 2.15 does not create an improper presumption of guilt arising from the mere fact of possession of stolen property, or reduce the prosecution's burden of proof to a lesser standard than beyond a reasonable doubt. Rather, the instruction 'relates a contrary proposition: a burglary . . . may not be presumed from mere possession unless the commission of the offense is corroborated.' [Citation.] The inference permitted by CALJIC No. 2.15 is permissive, not mandatory. Because a jury may accept or reject a permissive inference 'based on its evaluation of the evidence, [it] therefore does not relieve the People of any burden of establishing guilt beyond a reasonable doubt.' [Citation.] Requiring only 'slight' corroborative evidence in support of a permissive inference, such as that created by possession of stolen property, does not change the prosecution's burden of proving every element of the offense, or otherwise violate the accuser's right to due process unless the conclusion suggested is not one that reason or common sense could justify in light of the proven facts before the jury. [Citations.]" (*Id.* at pp. 1226–1227.)

Similarly here, CALCRIM No. 376 makes it quite apparent that the "slight" supporting evidence is not to be considered in isolation, but together with all of the other evidence for purposes of determining whether there is proof beyond a reasonable doubt that the defendant committed robbery. (See, e.g., *People v. Solorzano* (2007) 153 Cal.App.4th 1026, 1035–1036 [63 Cal.Rptr.3d 659].) The instruction expressly requires the jury to be "convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt." (CALCRIM No. 376.) Thus, CALCRIM No. 376 does nothing to diminish the prosecution's burden of proof. (See, e.g., *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 189 [112 Cal.Rptr.3d 746, 235 P.3d 62] [CALJIC No. 2.15 contains no suggestion that the jury need not find that all of the elements of the crime have been proved beyond a reasonable doubt].)

Nevertheless, appellant insists that a federal case supports his position; he cites to *U.S. v. Gray* (5th Cir. 1980) 626 F.2d 494 (*Gray*). Again, respectfully,

we disagree. The case appellant relies on dealt with a conspiracy instruction tied to the substantive element of a conspiracy charge. In *Gray*, the jury was instructed on the elements of conspiracy and then told that " '[t]he Government need only introduce slight evidence of a particular defendant's participation, once the conspiracy is established, but must establish beyond a reasonable doubt that each member had a knowing, special intent to join the conspiracy.' " (*Id.* at p. 500.) The Fifth Circuit has consistently condemned that instruction, finding that it lowers the reasonable doubt standard. (*Ibid.*; *U.S. v. Brasseaux* (5th Cir. 1975) 509 F.2d 157, 161, fn. 5, and cases cited there.) Here, the issue was whether guilt on a burglary charge may be inferred from the possession of recently stolen property along with other supporting evidence. *Gray* is not analogous or persuasive.

■ As this court stated in *Williams, supra,* 79 Cal.App.4th 1157, "an inference of guilt may rationally arise from the concurrence of conscious possession and many other circumstances." (*Id.* at p. 1173.) In our view, CALCRIM No. 376, similar to CALJIC No. 2.15, "correctly prohibits the jury from drawing an inference of guilt solely from conscious possession of recently stolen property but properly permits the jury to draw such an inference where there is additional corroborating evidence. As long as the corroborating evidence together with the conscious possession could naturally and reasonably support an inference of guilt, and that inference is sufficient to sustain a verdict beyond a reasonable doubt, we discern nothing that lessens the prosecution's burden of proof or implicates a defendant's right to due process." (79 Cal.App.4th at p. 1173.) In addition, CALCRIM No. 376 reminds the jury of the prosecution's burden to prove its case beyond a reasonable doubt.

Further, we do not find CALCRIM No. 376 reasonably susceptible of being misinterpreted to lower the prosecution's burden of proof concerning burglary, especially when that instruction is viewed in light of all of the court's instructions—specifically, CALCRIM No. 220, which requires the jury to find that the prosecution has proved the defendant guilty beyond a reasonable doubt.

In sum, we reject appellant's contention that CALCRIM No. 376 lowers the prosecution's burden of proof.

## II. *Prior Uncharged Instances of Misconduct*

Before trial, appellant moved to exclude evidence of his prior uncharged misconduct on the ground that such admission would violate Evidence Code section 1101, subdivision (b) and his due process rights under both the state and federal Constitutions.

Specifically, in his written motion, appellant objected to the admission of evidence of "an arrest for a violation of Vehicle Code section 10851 [(auto theft)] from March 2008," plus "a conviction for a violation of Penal Code section 496 [(receiving stolen property)] from 2007," and "an incident of possession of a cellular telephone that was stolen out of a vehicle in April 2008."

In limine, the prosecutor asked the court to admit evidence that appellant had been in possession of Nancy Ramirez's California identification and bank cards that had been in her purse, which, as noted, was stolen from her boyfriend's green Acura Integra, and in March 2008, appellant was stopped while driving Alan Bond's car, which had been stolen in February. At the time, appellant was found in possession of the items belonging to Nancy Ramirez, he was also found in possession of an iPod and a glass punch. According to the prosecutor, appellant admitted that he took the iPod from a green truck. However, he denied stealing Nancy Ramirez's purse and Alan Bond's car; he said that he unknowingly obtained Ramirez's property when he purchased a wallet at a garage sale, and did not realize he was driving a stolen car.

Defense counsel argued that there was insufficient similarity between appellant's prior conduct and the present offenses. In ruling that the court would admit the evidence, the court found that the evidence was "probative of intent." The court did not elaborate or give a detailed analysis to support the court's conclusion.[9]

Accordingly, Nancy Ramirez, Officer Jason Kilmer, Alan Bond, and Officer Kalsbeek testified as outlined *ante*. The court instructed the jury that their evidence was to be considered only for the "limited purpose of deciding whether or not [appellant] acted with the intent to steal and/or that the [appellant] knew that the property was stolen" but was "not sufficient by itself to prove that the [appellant was] guilty of burglary or receiving stolen property."

Appellant argues that the admission of the evidence of prior instances of misconduct violated his due process rights, Evidence Code section 352, and Evidence Code section 1101, subdivision (b) because the challenged evidence was irrelevant to any contested issue at trial. It served only to prove that he was a thief and therefore disposed to commit the charged crimes. He asserts that the only element in dispute was identity and the prosecution sought to shore up its case for the charged crimes by proving that he was a thief who

---

[9] The court refused to allow the prosecutor to present evidence of a third incident related to the possession of a stolen cell phone.

had stolen multiple times in the past and was therefore "likely to have committed the burglary and theft."

Since appellant was found not guilty of receiving stolen property, of the theft of the Trevino car stereo, and with respect to the theft of and use of Sablan's credit card, and as to the second degree burglary of the 7-Eleven defense counsel conceded guilt arising therefrom, we confine the following analysis to the first degree burglary count.

■ Evidence of prior uncharged acts is inadmissible to prove the defendant's bad character, but may be admitted if relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident, among other facts. (Evid. Code, § 1101, subds. (a), (b).) We review the trial court's evidentiary rulings for abuse of discretion. (*People v. Smithey* (1999) 20 Cal.4th 936, 970 [86 Cal.Rptr.2d 243, 978 P.2d 1171]; *People v. Crittenden* (1994) 9 Cal.4th 83, 132 [36 Cal.Rptr.2d 474, 885 P.2d 887].)

Appellant asserts that the evidence was inadmissible as to intent because if he committed the alleged act, his intent in so doing could not reasonably be disputed, that is it was a "foregone conclusion."

In *People v. Ewoldt* (1994) 7 Cal.4th 380 [27 Cal.Rptr.2d 646, 867 P.2d 757] (*Ewoldt*), the California Supreme Court held, "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such act . . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant " 'probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*Id.* at p. 402.) Moreover, as to the admission of evidence of prior uncharged acts, the court explained, "[e]vidence of *intent* is admissible to prove that, if the defendant committed the act alleged, he or she did so with the intent that comprises an element of the charged offense. 'In proving intent, the act is conceded or assumed; what is sought is the state of mind that accompanied it.' [Citation.]" (*Id.* at p. 394, fn. 2.) Here, the act in which appellant was alleged to have engaged—burglarizing Mendicino's house—was not conceded or assumed; the identity of the perpetrator in this crime was a highly contested issue.

■ "Evidence of uncharged offenses 'is so prejudicial that its admission *requires extremely careful analysis.* [Citations.]' [Citations.]" (*Ewoldt, supra,* 7

Cal.4th at p. 404, italics added.) Further, "to be admissible such evidence 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352. [Citations.]' [Citation.]" (*Ibid.*) Thus, we are required "to examine whether the probative value of the evidence of defendant's uncharged offenses is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.)" (*Ibid.*)

" 'Evidence is prejudicial within the meaning of Evidence Code section 352 if it " 'uniquely tends to evoke an emotional bias against a party as an individual' " [citation] or if it would cause the jury to " ' "prejudg[e]" a person or cause on the basis of extraneous factors' " [citation].' [Citation.]" (*People v. Foster* (2010) 50 Cal.4th 1301, 1331 [117 Cal.Rptr.3d 658, 242 P.3d 105].) " 'As Wigmore notes, admission of this evidence produces an "overstrong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts." [Citation.] It breeds a "tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offences [*sic*] . . . ." [Citation.] Moreover, "the jury might be unable to identify with a defendant of offensive character, and hence tend to disbelieve the evidence in his favor." [Citation.]' [Citation.]" (*Ibid.*) "Due to these inherent risks, 'uncharged offenses are admissible only if they have *substantial* probative value.' [Citations.]" (*Ibid.*)

We find this to be a case with regard to the first degree burglary count where the evidence of uncharged offenses did not have *substantial* probative value that outweighed its inherent prejudice. Evidence regarding the Mendicino burglary showed that someone entered the kitchen of the Mendicino residence and took two purses. Assuming appellant committed the alleged conduct, his intent in so doing could not reasonably be disputed—there could be no innocent explanation for that act. Thus, the prejudicial effect of admitting evidence of a prior car burglary and prior car theft outweighed the probative value of the evidence to prove intent as to the Mendicino burglary charge. (*Ewoldt, supra*, 7 Cal.4th at p. 406.)

■ Simply put, evidence of uncharged acts cannot be used to prove something that other evidence showed was beyond dispute; the prejudicial effect of the evidence of the uncharged acts outweighs its probative value to prove intent as it is cumulative regarding that issue. (*Ewoldt, supra*, 7 Cal.4th at p. 406; see *People v. Allen* (1986) 42 Cal.3d 1222, 1257–1258 [232 Cal.Rptr. 849, 729 P.2d 115] [admission of photographs cumulative to other evidence that was itself detailed and essentially uncontested may have been an abuse of discretion].)

■ "[A]dmission of other crimes evidence cannot be justified merely by asserting an admissible purpose. Such evidence may *only* be admitted if it '(a) "tends logically, naturally and by reasonable inference" to prove the issue upon which it is offered; (b) *is offered upon an issue which will ultimately prove to be material to the People's case; and* (c) *is not merely cumulative with respect to other evidence which the People may use to prove the same issue.*' [Citation.]" (*People v. Guerrero* (1976) 16 Cal.3d 719, 724 [129 Cal.Rptr. 166, 548 P.2d 366], italics added.)

Nevertheless, the erroneous admission of other crimes evidence is harmless if it does not appear reasonably probable that without the error a result more favorable to the defendant would have been reached. (See *People v. Malone* (1988) 47 Cal.3d 1, 22 [252 Cal.Rptr. 525, 762 P.2d 1249] [error in admitting Evid. Code, § 1101 evidence tested by *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] harmless error standard].)

The evidence connecting appellant to the Mendicino burglary was minimal and conflicting. On the one hand, a pink flashlight similar to the one that was in Mendicino's purse was found in a car that appellant had used. On the other hand, Zumini testified that he was the person who entered Mendicino's house, that appellant had nothing to do with the burglary and that he rode in the car appellant was driving to get to the 7-Eleven and may have left some things in the car. There was no evidence tying appellant directly to the burglary—no evidence (as opposed to speculation) from which we could reasonably infer that appellant was the burglar or aided and abetted Zumini in the burglary. Here, there were no other inculpatory circumstances that tended to show appellant's guilt on the burglary charge other than the pink flashlight being found in a car that he had driven. Given the state of the evidence on the first degree burglary charge, we are persuaded that it is reasonably probable that without the erroneous admission of prior instances of misconduct a result more favorable to appellant would have been reached.

Accordingly, we must reverse appellant's conviction on count one—the first degree burglary charge.

III. *Section 654*

Although we must reverse this case, we address appellant's final issue for the guidance of the trial court at the time appellant is resentenced.

Appellant received concurrent sentences for both counts five (using a stolen access card belonging to Sablan) and six (petty theft of personal property—Sablan's purse and contents). Appellant argues that both charges involved the same indivisible course of conduct. He asserts that pursuant to

section 654, the court should have stayed the sentence on count five. Appellant does not elaborate on why the course of conduct involving these two charges was indivisible.

■ Section 654 provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Accordingly, "[s]ection 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591 [76 Cal.Rptr.2d 255, 957 P.2d 945].) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses not for more than one.' [Citation.]" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208 [23 Cal.Rptr.2d 144, 858 P.2d 611].) If the court makes no express findings on the issue, as happened here, a finding that the crimes were divisible is implicit in the judgment and must be upheld if supported by substantial evidence. (*People v. Blake* (1998) 68 Cal.App.4th 509, 512 [80 Cal.Rptr.2d 308].) Thus, "[w]e review the trial court's findings 'in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' " (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085 [58 Cal.Rptr.2d 259].)

The Attorney General argues that appellant's crimes were divisible by time and place; appellant stole Sablan's purse from her car on Fontanelle Place, then he was miles away at a 7-Eleven store later when he used Sablan's stolen credit card.

Count six charged appellant with the theft of Sablan's purse. The court could reasonably have concluded that the objective in taking the purse was to obtain the contents of the purse so that they, and the purse, could be sold. Similarly, the court could reasonably have concluded that on finding the access card appellant's objective changed and thereafter his objective was to use that card to obtain merchandise.

Furthermore, "multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm." (*People v. Felix* (2001) 92 Cal.App.4th 905, 915 [112 Cal.Rptr.2d 311].) Under section 654, a course of conduct divisible in time, though directed to one objective, may give rise to multiple convictions and multiple punishment "where the offenses are temporally separated in such a way as to

afford the defendant opportunity to reflect and renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935 [97 Cal.Rptr.2d 392].)

Here, the amount of time that it took for appellant to drive to the 7-Eleven, park the car, and walk into the store was sufficient for him to reflect upon what he had already done (stolen Sablan's purse and its contents including the access card) and what he was about to do (use the access card to obtain merchandise).

Appellant relies on *People v. Bauer* (1969) 1 Cal.3d 368 [82 Cal.Rptr. 357, 461 P.2d 637], to support his claim that the sentence on count five should have been stayed pursuant to section 654. However, *Bauer* is inapposite. In that case, the defendant was convicted of burglary, robbery, grand theft, and automobile theft. (1 Cal.3d at p. 371.) The defendant and his cohorts entered the house of three elderly women under false pretenses, tied up the victims, took numerous items of their personal property, and drove away in one of the victim's cars. (*Id.* at p. 372.) The defendant was given concurrent sentences of imprisonment for robbery and auto theft. (*Id.* at pp. 371–372.) On appeal, he argued that section 654 barred the imposition of punishment for both robbery and car theft. The court agreed and explained that, under the principles of section 654, "the taking of several items during the course of a robbery may not be used to furnish the basis for separate sentences." (1 Cal.3d at pp. 376–377.) The court noted that the evidence showed the theft of the car was not an afterthought, but the robbers formed the intent to steal the car while they were ransacking the house and carrying the stolen property to the garage. (*Id.* at p. 377.) The court held that section 654 precluded double punishment under the specific circumstances of that case. (1 Cal.3d at p. 378.)

Undoubtedly, the facts of *Bauer* demonstrated an indivisible, continuous course of action, where the defendant stole the victims' personal property and stole one of the victim's cars to facilitate the robbery and leave the scene of the crime with the stolen goods. The court properly applied section 654, since all of the offenses were the means of facilitating one objective.

In contrast, as discussed *ante*, it was reasonable to conclude that appellant's actions in the instant case displayed multiple objectives. Given that there was no evidence presented that showed that appellant was aware that Sablan even had an access card in her purse, we cannot conclude that appellant's intent and objective in stealing the purse was to also steal the access card so that he could use it. Thus, section 654 did not apply.

Accordingly, we conclude that the trial court was correct in not staying appellant's sentence for use of Sablan's access card (count five).

## *Disposition*

The judgment is reversed and remanded to the trial court for further proceedings.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied September 15, 2011.