Filed 7/26/24  P. v. Brown CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESSIE JAMES BROWN,<br><br>    Defendant and Appellant. | E080881<br><br>(Super.Ct.No. BAF2001355)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Rene Navarro, Judge

Affirmed in part and remanded for resentencing.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and

Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Namita

Patel, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Jessie James Brown of multiple counts, including aggravated kidnapping and attempted rape. He argues the record contains insufficient evidence his movement of the victim satisfied the asportation element of aggravated kidnapping. He also argues, and the People concede, the trial court should have applied Penal Code section 654 to stay punishment for some of his offenses.[1] We reject his first argument but agree we must remand for resentencing consistent with section 654.

FACTS

Brown's victim was employed by Riverside County as an in-home care provider, helping patients with things they cannot do for themselves. Brown was her patient for years before November 5, 2020, when the crimes took place.

The kitchen of Brown's apartment is immediately to the right of the front door. Straight ahead from the front door is the living room. Past the living room is a door that leads to a hallway with two bedrooms and a restroom. When the victim entered Brown's apartment on November 5, she left the outer front door open and closed the inner screen door.

The victim was in the kitchen preparing to clean Brown's apartment when he "attacked" her. She testified he had been in the living room "complaining" and just "mumbling on," which he often did, so she "just let him go ahead and talk." She did not hear him come into the kitchen; she first noticed him when he grabbed her, threw her up

---

[1] Undesignated statutory references are to the Penal Code.

2

against a wall, and "socked" her.  He told her "You're going to have sex with me today."  She refused, saying "No," and "You can't make me have sex with you."

Brown and the victim struggled in the kitchen for some time.  He kept pulling her off the wall and pushing her back into it, which hurt.  He repeatedly asked her if she would call the police, and she promised not to, if he let her go.  He repeatedly demanded that she have sex with him, and she repeatedly refused.  Every time she refused, he punched her in the stomach.

A neighbor then came to the open door of the apartment.  The victim yelled to him, asking for help.  Brown told him to get away from the door or "he was going to do something to him, and the guy just left."  Brown told the victim to "shut up," and threatened to kill her: "[H]e said, I'll kill you right now.  He said, I'll kill you and put you in the trunk of your car and take you somewhere."  She believed him, because he was "scary-looking," and because about a week earlier he had told her he had "killed someone before" and "it would be easy to do it again."

As Brown continued to push the victim against the wall, the neighbor returned to the door and called out Brown's name.  Brown let go of the victim for a moment, turning towards the door and "telling the [neighbor] if he didn't get away from the door, what he was going to do to him."  The victim tried to run past Brown and escape.  Brown caught her, wrapping his arms around her body, and again threw her against the same wall.  The neighbor left.

After the neighbor left, the victim was crying. Brown told her that if she "didn't shut up, he was going to kill [her] right now." Holding her with one hand, he used the other to pick up a ceramic coffee cup from the sink and hold it over her head as if he were going to hit her. When he set the coffee cup down, he put both hands around her neck, and applied "a little" pressure. She became quiet, because she was afraid he would kill her. He continued pushing her against the kitchen wall and demanding sex, she continued refusing, and he continued to punch her when she refused.

After about twenty or thirty minutes of struggling in the kitchen, Brown dragged the victim down the hall to the bedroom furthest from the front door. In doing so, they passed the front door, and Brown pushed it closed. In the bedroom, Brown threw the victim onto a mattress that was on the floor and got on top of her. She resisted, so he started punching her again. He then sexually assaulted her; as the details of that sexual assault are not relevant to the appellate issues, we will not describe them.

Brown was tried on five counts: (1) rape by force (§ 261, subd. (a)(2), count 1); (2) kidnapping to commit rape (§ 209, subd. (b)(1), count 2); (3) criminal threats (§ 422, count 3); false imprisonment (§ 236, count 4), and assault with force likely to produce great bodily injury (§ 245, subd. (a)(4), count 5). The amended information also alleged several aggravating factors (Cal. Rules of Court, rule 4.421(a)(1) & (a)(3)) and that Brown had a strike prior (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)). The jury found Brown guilty of only the lesser included offense of attempted rape on count 1,

found him guilty as charged on counts 2 through 5, and found true the aggravating factor and strike prior allegations.

The trial court imposed punishment for each count, running all the sentences consecutive to each other. On count 1, the court imposed the upper term of four years, doubled to eight years by the strike prior. On count 2, it imposed a consecutive term of seven years to life, doubled to 14 years to life by the strike prior. On count 3 and 4, it imposed consecutive terms of one year and four months each. On count 5, it imposed a consecutive term of two years. In all, the trial court sentenced Brown to an aggregate term of 12 years and eight months plus 14 years to life.

DISCUSSION

A. *Aggravated kidnapping*

Brown argues his movement of the victim from the kitchen to the bedroom "was not substantial but was merely incidental to the attempted rape and did not increase the risk of harm to her." We are not persuaded.

"The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 (*Dominguez*).) Thus, kidnapping to commit rape "requires that the movement of the victim be for a distance which is more than that which is merely incidental to the commission or attempted commission of rape . . . , and that this movement substantially increase the risk of harm to the victim over and above that necessarily present in the commission or attempted commission of these crimes." (*People v. Rayford* (1994) 9

5

Cal.4th 1, 22 (*Rayford*); see § 209, subd. (b)(2).) "These two aspects are not mutually exclusive, but interrelated." (*Rayford*, at p. 12.)

"Whether the forced movement of the victim was merely incidental to the target crime, and whether that movement substantially increased the risk of harm to the victim, 'is difficult to capture in a simple verbal formulation that would apply to all cases.'" (*People v. Curry* (2007) 158 Cal.App.4th 766, 780.) Our Supreme Court has "articulated various circumstances the jury should consider, such as whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes." (*Dominguez*, *supra*, 39 Cal.4th at p. 1152.) The distance the victim was forced to move is "necessarily" part of the analysis, but "no minimum distance is required . . . so long as the movement is substantial." (*Id.* at p. 1152.) "Where movement changes the victim's environment, it does not have to be great in distance to be substantial." (*People v. Shadden* (2001) 93 Cal.App.4th 164, 168-169 (*Shadden*) [movement of nine feet from front counter of store to back room was substantial and increased victim's risk of harm].)

Here, Brown moved the victim only a short distance, from the kitchen to the back bedroom of his apartment. But this additional distance from the front door, combined with Brown closing the door as they moved, decreased the likelihood of detection by preventing the victim from calling out for help or a bystander again interrupting the attack. (See, e.g., *People v. Robertson* (2012) 208 Cal.App.4th 965, 985 (*Robertson*) ("'[A] rape victim is certainly more at risk when concealed from public view and

6

therefore more vulnerable to attack.'"]; *Shadden*, *supra*, 93 Cal.App.4th at p. 170 [movement "placed [the victim] out of public view"].)  A neighbor in fact had been at the front door moments before Brown moved the victim.

The movement away from the door also "reduced the possibility that the victim could escape." (*Robertson*, *supra*, 208 Cal.App.4th at p. 985.)  Moreover, "[w]here a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape." (*Shadden*, *supra*, 93 Cal.App.4th at p. 169.)  There was ample basis for the jury to conclude Brown moved the victim a distance that was substantial under the circumstances, not merely incidental to the rape, and increased the risk of harm to the victim.

Brown's comparison of this case to *People v. Perkins* (2016) 5 Cal.App.5th 454 (*Perkins*) is unpersuasive.  In this case, as in *Perkins*, the victim was moved "from one room to another inside a small apartment." (*Id.* at p. 470.)  Here, however, there was evidence of a meaningful change in the victim's environment, to a secluded bedroom from a space visible from the outside through an open screen door.  That was not the case in *Perkins*, where the bathroom where the attack started and the bedroom where the victim was moved were equally concealed.  (*Id.* at p. 470.)  Here, the movement decreased the victim's chance to escape.  In *Perkins*, the court found no evidence that the movement made escape more difficult and speculated that the bedroom where the victim was moved "may have actually given her more of an opportunity." (*Ibid.*)  Here, Brown

began the sexual attack only once the victim was moved to the bedroom, after 20 or 30 minutes of struggling in the kitchen. In *Perkins*, the defendant "had the opportunity to commit whatever crime he wanted in both rooms, and he did." (*Ibid.*) These differences distinguish this case from *Perkins*.

Brown's comparison to *People v. Waqa* (2023) 92 Cal.App.5th 565 is no more persuasive. In that case, the victim was moved from one stall to another within a public bathroom. (*Id.* at p. 580.) That movement "may have made it easier for [the defendant] to complete the rape," but the victim's risk of harm beyond that inherent in the rape "was not clearly increased in the large stall," and "the two stalls did not significantly differ in the opportunities they afforded for detection or escape." (*Id.* at pp. 580, 582-583.) Here, in contrast, evidence supported the conclusion that the movement was substantial and increased the victim's risk of harm, despite the short distance, as the kitchen and the back bedroom of Brown's apartment were qualitatively different environments,

We find substantial evidence supports Brown's conviction for aggravated kidnapping.

B. *Section 654*

Brown argues, and the People concede, the trial court should have stayed punishment for some of his conviction offenses under section 654, though the parties disagree about how exactly section 654 should apply. We agree the court erred, so we remand for the trial court to decide the disputed factual issues and resentence Brown.

Section 654 prohibits multiple punishments for multiple offenses committed by a single act or during an indivisible course of conduct. (*People v. Pinon* (2016) 6 Cal.App.5th 956, 967.) A course of conduct is generally indivisible if the defendant harbored a single criminal objective the entire time. (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.) "However, if the defendant harbored 'multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct.'" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) "The temporal proximity of two offenses is insufficient by itself to establish that they were incidental to a single objective." (*People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.) "Objectives may be separate when 'the objectives were either (1) consecutive even if similar or (2) different even if simultaneous.'" (*Ibid.*)

Also, even where a course of conduct is "directed to one objective," multiple punishments are justified if the acts comprising the course of conduct are "divisible in time." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) In this context, acts are divisible in time if the defendant had sufficient time between them to "reflect upon what he had already done . . . and what he was about to do." (*People v. Lopez* (2011) 198 Cal.App.4th 698, 718.)

"'The question of whether the acts of which defendant has been convicted constitute an indivisible course of conduct is primarily a factual determination, made by

9

the trial court on the basis of its findings concerning the defendant's intent and objective in committing the acts." (*People v. Nichols* (1994) 29 Cal.App.4th 1651, 1657.) "The court's express or implied findings in support of its determination that section 654 does not apply will be upheld on appeal if substantial evidence supports them." (*People v. Cruz* (2020) 46 Cal.App.5th 715, 737.) "'Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.'" (*People v. Hester* (2000) 22 Cal.4th 290, 295.)

The parties agree, as do we, that the trial court erred by imposing punishment for both count 1 and count 2. Where a kidnapping and sexual assault are separate acts, but the purpose of the kidnapping was to facilitate the sexual assault, section 654 bars imposing punishment for both offenses. (E.g., *People v. Latimer* (1993) 5 Cal.4th 1203, 1216.) This case therefore must be remanded for the trial court to exercise its discretion as to which punishment to stay. (See § 654, subd. (a) ["An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision"].)

The parties disagree as to whether counts 3 and 5 are part of the same indivisible course of conduct as count 1, though they agree that the trial court erred by imposing punishment on *both* those counts. The People's view is that under section 654, it was proper to impose punishment for either count 3 or 5, but not both. Brown's view is that counts 3 or 5 are not only part of the same indivisible course of conduct as one another,

10

but also count 1. The trial court had no opportunity to consider these views, because neither party expressed them until this appeal. Since we have concluded the case must be remanded for resentencing, we will refrain from opining on this disputed issue of fact, so the trial court may decide it in the first instance.

DISPOSITION

The case is remanded for resentencing consistent with section 654. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____

J.

We concur:

RAMIREZ _____

P. J.

MILLER _____

J.