Filed 12/8/25  P. v. Jackson CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>JAYLYN DEMETRIUS JACKSON,<br>    Defendant and Appellant. | A170343<br><br>(City and County of San Francisco<br>Super. Ct. No. CRI23016963) |

A jury found Jaylyn Demetrius Jackson guilty of second degree commercial burglary and related offenses after he forced his way into an office building and loaded a backpack with laptops and other electronics.  He claims the trial court prejudicially erred by admitting evidence that he stole electronics from two other office buildings to prove intent.  (Evid. Code, § 1101, subd. (b).)[1]  We disagree, and affirm the judgment.  However, we order that the commitment document be corrected to reflect that the sentences for the nonburglary convictions were stayed pursuant to Penal Code section 654.

---

[1] Undesignated statutory references are to the Evidence Code.

1

# I. BACKGROUND

On a Sunday in 2023, Jackson entered the San Francisco office of Aurora Innovation ("Aurora"), a "self-driving truck company," without permission. He testified that he pulled on the front door and felt that it had "some give," then simply "yanked it" open and entered. He went upstairs and took water, snacks, and sanitizer wipes from a kitchenette. Then he "snooped around" and "looked in a couple of drawers." He went to all five floors of the building and "didn't see anybody around."

Jackson was in the building for about two and a half hours. Surveillance video showed him "going through desks, looking in common spaces, testing doors," and at one point "attempt[ing] to use an access control badge to gain access to another secure space." Eventually, he took a backpack from an employee's desk, which he loaded with three employees' laptops and some audio equipment. He left the backpack on the third floor, where officers later recovered it.

Officers responded to a call regarding a possible burglary or trespass at Aurora's office shortly after 5:00 o'clock that afternoon, but left when they could not gain entry to the building or contact anyone who could let them in. The officers responded to a second call concerning the building about an hour and a half later. After they arrived in their patrol vehicle, one of the officers saw Jackson through a second-story window, "quickly dart[ing] back into the building." He briefly saw Jackson again near a third-floor window.

After some time, an Aurora employee arrived to let the officers in. They found Jackson on a fifth-floor balcony "behind a planter box." He was lying face down in "a very narrow area," "wedged between" the planter box and a banister. His body was "large for that space," so it "took some time to get him out." After the officers "were able to extract him," Jackson claimed

that someone had let him into the building "to use the restroom." He requested "a citation" for "trespassing."

Jackson was arrested and charged with second degree commercial burglary (Pen. Code, § 459), vandalism to doors in Aurora's office (*id.*, § 594, subd. (b)(1)), and attempted grand theft of personal property (*id.*, §§ 664, 487, subd. (a)).

A jury trial was held in early 2024. The People presented evidence about the charged offenses as we have summarized, and they also introduced evidence that Jackson stole electronic equipment from two other office buildings in San Francisco in 2015 and 2016, also outside of business hours.

Jackson testified in his own defense, claiming he did not intend to steal or damage Aurora's property. He explained that he had used all his money to travel from his residence in Sacramento to visit his girlfriend in San Francisco, but she "kicked [him] out" after they had an argument. He had nowhere to stay, and he was "up for . . . three days outside" on the streets. It was "scary" and "unsafe," and he "couldn't sleep." He was in "desperate need," so he forced his way into Aurora's office to find shelter for the night. At the time, he did not intend to take anything. He began looking through drawers to try to find a charger for his phone. He knew he was trespassing, but it was "a couple [of] hours" until he "thought [he] needed some money" and decided to put things in a backpack. As he loaded the backpack, he was "conflicted," and he set it down on the third floor, "contemplating if [he] was going to take it or not." He ultimately decided he "didn't want" the backpack anymore and "was just going to lay down" until the morning and "get some rest." He "was half [a]sleep" when officers found him and "probably said some things that definitely weren't true," in order "to alleviate the situation."

The jury found Jackson guilty of all the charged offenses. The trial court held a bench trial and found that two aggravating factors were present. (Cal. Rules of Court, rules 4.421(b)(2) & (3).) The court sentenced Jackson to the upper term of three years for the burglary count, to be served in county jail, and stayed the sentences for the remaining counts (Pen. Code, § 654).

## II.  DISCUSSION

### A.  Section 1101

While evidence of a person's character is inadmissible to prove conduct on a specific occasion, "evidence that a person committed a crime" is admissible "when relevant to prove some fact . . . other than [a] disposition to commit such an act," including intent. (§ 1101, subd. (b).) The court may exclude such evidence under section 352 if its probative value is substantially outweighed by the probability that its admission will consume undue time or create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. (§ 352.) We review a trial court's decision to admit evidence under sections 1101 and 352 for abuse of discretion. (*People v. Thomas* (2023) 14 Cal.5th 327, 358.)

Here, Jackson's intent when he entered Aurora's office was the key issue at trial. Notwithstanding his claim that he stayed in Aurora's office longer, the two other times when he stole electronic equipment from offices in San Francisco were similar enough to the charged offenses to support the inference that he " ' " 'probably harbor[ed] the same intent in each instance.' " ' " (*People v. Chhoun* (2021) 11 Cal.5th 1, 25 (*Chhoun*).) The prior offenses were clearly relevant to intent, which is the issue that requires " '[t]he least degree of similarity' " to warrant admitting evidence under section 1101. (*Ibid.*) The trial court's ruling under that section was correct.

4

The trial court was also within its discretion to admit the evidence under section 352. The probative value of the evidence was enhanced because its source—testimony by individuals uninvolved with the charged crimes—was independent of the evidence of the charged offenses, and the prior offenses were not too remote in time from the charged ones. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 397–398, 404–405 [prior offenses committed over a decade before charged offenses were not necessarily too remote].) The potential for prejudice was reduced because the evidence was no stronger or more inflammatory than the evidence of the charged offenses. (*Id.* at p. 405.) There was little danger that the jury would be "inclined to punish defendant" for the prior offenses since it knew the testifying officer had investigated them and Jackson was convicted of one. (*Ibid.*) Finally, the trial court read limiting instructions directing the jury not to use the evidence for an improper purpose, including bad character. We presume the jury followed these instructions. (*Chhoun, supra,* 11 Cal.5th at p. 30.)

Jackson argues the evidence was cumulative given other evidence that he planned to steal from Aurora. But his intent was disputed: the jury had to infer it from the surrounding circumstances, weighed against Jackson's contrary testimony. In this situation, additional evidence of intent was not merely cumulative. (See *Chhoun, supra*, 11 Cal.5th at p. 29; *People v. Scott* (2015) 61 Cal.4th 363, 399–400 [evidence of other burglaries by defendant was not cumulative of evidence that wallet went missing during the charged crime]; *People v. Jones* (2011) 51 Cal.4th 346, 372 [evidence of prior robbery by defendant admissible to prove intent despite other undisputed evidence that perpetrator meant to rob residence].)[2] And the court was sensitive to

---

[2] We distinguish *People v. Balcom* (1994) 7 Cal.4th 414, 422–423, where the defendant denied putting a gun to a rape victim's head, and

5

this issue: observing that there were "41 separate charged counts" against Jackson between 2015 and 2019, it explained that "41 aren't coming in. That would certainly be 352," so "it may be that one or two is where the Court lands." We find no abuse of discretion in the court's ruling.

## B. Errors in the Commitment Document

As Jackson notes in his opening brief, the original and amended county jail commitments reflect that the sentences on counts two and three are to run concurrently to the sentence for count one, when the trial court actually stayed those sentences pursuant to Penal Code section 654. We will direct the trial court to correct this error. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["Courts may correct clerical errors at any time, and appellate courts (including this one) that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts."].)

## III. DISPOSITION

The judgment is affirmed. The trial court is directed to correct the county jail commitment to reflect that the sentences for vandalism (Pen. Code, § 594, subd. (b)(1)) and attempted grand theft of personal property (*id.*, §§ 664, 487, subd. (a)) were stayed pursuant to Penal Code section 654, and to forward a certified copy of the corrected commitment document to the San Francisco Sheriff's Office.[3]

---

*People v. Lopez* (2011) 198 Cal.App.4th 698, 713–715, where the defense concerned identity. In those cases, intent was not the focus of the defense.

[3] The record does not contain an abstract of judgment. If one has been prepared that does not show these sentences were stayed, the trial court shall prepare an amended abstract of judgment indicating that they were, and forward a certified copy to the appropriate officer.

6

_____
SMILEY, J.


WE CONCUR:


_____
HUMES, P. J.


_____
LANGHORNE WILSON, J.


*The People v. Jaylyn Demetrius Jackson* / A170343