Filed 5/21/24  P. v. Pouvifata CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C098480 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF210000548) |
| v. | |
| BENJAMIN SAMUEL POUVIFATA, | |
| Defendant and Appellant. | |

When defendant Benjamin Samuel Pouvifata saw a text message that led him to believe that V.O.,[1] who lived with defendant and had a child with him, was cheating, defendant told V.O. he was going to kill her, punched her in the living room of their

---

[1] To protect their privacy, we refer to the parties and a witness by their initials.  (Cal. Rules of Court, rule 8.90(a)(1), (b)(4), (10).

townhouse (Pen. Code, § 273.5, subd. (a);[2] count 8), dragged her into the kitchen and slammed her head against the sink (§ 245, subd. (a)(4); count 6), and then dragged her to the stairs, shoved her head between the railings, and kicked the back of her neck (§ 273.5, subd. (a); count 12). Thwarted in his efforts to continue beating V.O. when she fled to a neighbor's townhouse, defendant retrieved a firearm and shot V.O. (§§ 664/187, subd. (a), 12022.53, subd. (d); count 2), as well as the neighbor who defended her, G.B. A jury found defendant guilty of attempted murder of V.O. and G.B., as well as numerous assaultive offenses, including those alleged in counts 6, 8, and 12. The trial court sentenced defendant to an indeterminate term of 64 years to life and a determinate term of 14 years.

On appeal, defendant claims the trial court's failure to stay the terms on counts 2, 6, 8, and 12 violated section 654. We disagree and will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*A.    Facts*

In January 2021, defendant was V.O.'s boyfriend and they lived together in a two-story townhouse. They had a son together. V.O. and defendant were also raising his son.

On January 15, 2021, upon coming home from work, V.O. became upset when she learned that both children had been outside all day by themselves. After visiting with a neighbor, T.W., V.O. brought the children inside their home and started making dinner. Defendant was inside. Defendant had been drinking and was intoxicated. They got into an argument. V.O. asked him why the children were outside all day. Defendant said the children were being watched and were fine.

V.O.'s cell phone beeped as if she had received a text message. V.O. had plugged her phone in by the stereo speakers. V.O. was coming in the front door when she heard

---

[2]  Undesignated statutory references are to the Penal Code.

the beep. Two weeks before, V.O. had sent G.B. a nude photograph of herself. G.B. might have been sending V.O. a text. V.O. was walking up to where the phone was plugged in, when defendant grabbed the phone before V.O. could see who the text was from. Defendant said, "You fucking whore. You cheating on me again. I'm going to kill you." When defendant said this, they were in front of the couch. Defendant hit V.O. with his fist multiple times on the side of her head. V.O. told the children to run and get help.

Defendant grabbed V.O. by the neck. At that point, they were in front of a desk, almost in the kitchen. Defendant dragged V.O. by the neck, shoved her head into the kitchen sink that was partially filled with water, and held her under for 30 to 45 seconds until she unplugged the sink to let the water out. After V.O. unplugged the sink, defendant hit her head on the counter in front of the sink.

Defendant dragged V.O. over to the stairs. She got free for a second to try to run out the door. Defendant locked the door and pushed V.O. to the top of the stairs. Defendant shoved V.O.'s head between the railings and started kicking the back of her neck. Defendant was yelling and screaming that he was going to kill V.O. V.O. thought she was going to die. V.O. told defendant she wanted to tell him something before she died. Defendant stopped and asked what she had to tell him. V.O. got up, unlocked the door, and was able to get out before defendant got to the door.

T.W., in the adjacent townhouse had heard defendant and V.O. fighting, called 911, and told her granddaughter to get G.B. G.B. arrived while T.W. was on the phone with the police. Defendant chased V.O. to T.W.'s townhouse. He shoved her to the ground and was on top of her punching her face in front of T.W.'s front door. When defendant started to come in the door, V.O. tried unsuccessfully to pull him back. Once inside, defendant rushed at G.B., who threw a heavy ashtray, hitting defendant in the head. Defendant stepped back and then came at G.B. again. G.B. punched defendant and he fell down. G.B. told defendant not to move. V.O. kicked defendant in the face. She was screaming, "how can you do this to me?" V.O. ran back to their townhouse to hide

defendant's shotgun and rifle. Defendant did not get up for 10 minutes. V.O. returned to T.W.'s townhouse and saw defendant on the ground. He was saying, "stop, I'm done." After G.B. believed enough time had passed for things to settle down, he let defendant get up and leave. V.O. locked T.W's front door.

V.O. went to the bathroom to clean up the blood on her face. She had a "goose egg" that was bleeding on her head, her eyes were swollen, her nose was bleeding, and her jaw was numb. After a minute or two, G.B. came to the bathroom door, asked if she was all right, and started to open the bathroom door. Defendant kicked in the front door of T.W.'s townhouse and pointed a rifle at G.B. G.B. fled into the bathroom and started to close the door, but defendant swung it open and started shooting with a military-style weapon with a large clip. G.B. jumped on V.O. and pushed her down against the wall. V.O. was shot in both arms. G.B. was shot in the stomach, chest, side, and back of the head.

V.O. and G.B. grabbed defendant's gun and pushed it back against him. They pushed defendant into a hot tub in the kitchen where G.B. was able to get the gun away from defendant. V.O. tried to grab the gun from G.B. but defendant's sister had arrived and took it from G.B. G.B. walked out. Defendant got up, punched V.O., threw her across a glass table, and stomped on her head, while calling V.O. a whore and threatening to kill her. Then defendant left.

B.    Trial

At trial, the jurors were instructed that they must agree on the specific act defendant committed for each crime.

In closing argument, the prosecutor argued that defendant attempted to murder V.O. (as alleged in count 2) when he went back to his townhouse, got his rifle and loaded it, walked back to T.W.'s townhouse, kicked in the door, and shot V.O. The prosecutor described counts 6, 8 and 12 as the counts involving "domestic violence." The prosecutor said that count 8 was based on defendant punching V.O. in the face and head

4

immediately after she received the text message.[3]  Count 6 arose when defendant slammed V.O.'s head against the kitchen counter.  Count 12 involved the injury V.O. suffered when defendant kicked her in the neck when she was on the stairs with her head between the rails.

The jury found defendant guilty of two counts of premeditated attempted murder (§§ 187/664; counts 1 and 2), two counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 3 and 4), grossly negligent discharge of a firearm (§ 246.3; count 5), assault with force likely to cause great bodily injury (§ 245, subd. (a)(4); count 6), two counts of criminal threats (§ 422; counts 7 and 9), two counts of corporal injury to a cohabitant/coparent (§ 273.5, subd. (a); counts 8 and 12), two counts of child abuse (§ 273a, subd. (a); counts 10 and 11), arson of an inhabited structure (§ 451, subd. (b); count 13), and two counts of resisting arrest (§ 148, subd. (a)(1); counts 14 and 15).[4]  The jury found true multiple firearm use and great bodily injury enhancements, as well as aggravating circumstances under California Rules of Court, rule 4.421.  The jury found defendant not guilty on one count, a misdemeanor battery charge involving G.B. (§ 242; count 16).

### C.    Sentencing

At sentencing, the trial court asked the prosecutor to comment on the application of section 654 to the determinate term crimes.  As relevant here, the prosecutor responded that count 6 covered the point in time when V.O.'s "face was forced into the water in the sink."  Count 8 covered when defendant "was punching in Ms. V.O.'s face and slamming

---

[3]  The prosecutor initially told the jury:  "So one of those counts, the [section] 273.5, you can pick which one you'd like."  But then the prosecutor said:  "No.  Let me take that back.  That would be Count 8.  That is going to be the swelling to her face, the redness to her face from getting punched in the face and the head by the defendant."

[4]  The facts underlying counts 13 through 15, which relate to defendant's conduct after he left T.W.'s home the second time, are not relevant to this appeal.

her face into the edge of the countertop." Count 12 "was the point of time when Ms. V.O. was placed between the banister's railings, essentially, and kicked [her] in the head." The prosecutor concluded that "given the argument to the jury of what those counts represented and the separate convictions for them, [section] 654 would not come into play."[5]

In sentencing, the trial court did not discuss its reasoning under section 654 for imposing consecutive sentences on counts 6, 8, and 12, but simply referred to these counts as the "non-stayed terms" on the chart in the prosecution's sentencing memorandum.[6] The trial court selected count 12 as the principal term, sentencing defendant to the middle term of three years in state prison for injury of a

---

[5] We agree with the parties that because the prosecutor argued to the jury in closing that count 6 involved defendant slamming V.O.'s head on the kitchen counter, not forcing her face in the sink, and count 8 involved punching V.O.'s face and head, not punching her face and slamming her head on the kitchen counter, we will disregard the prosecutor's argument on counts 6 and 8 at sentencing for purposes of analyzing the application of section 654. Courts consider the acts on which the prosecution based each charge *in argument to the jury* for purposes of applying section 654. (See *People v. McKinzie* (2012) 54 Cal.4th 1302, 1369 ["The Attorney General concedes . . . that defendant could not be punished for both carjacking and kidnapping for robbery because the prosecutor argued to the jury that the victim's car was the object of the robbery"], disapproved on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.) Otherwise, the punishment would not relate to the acts on which the jury based its verdict. (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1339 ["where there *is* a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654"].)

[6] In defendant's sentencing memorandum, as well as in argument at the sentencing hearing, defense counsel did not object to the trial court's failure to stay execution of sentence on counts 2, 6, 8, or 12 under section 654. Defendant correctly argues—and the People do not dispute—that defendant did not thereby waive this claim on appeal. " 'Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.' " (*People v. Hester* (2000) 22 Cal.4th 290, 295; see also *People v. Mendoza* (2022) 74 Cal.App.5th 843, 854.)

cohabitant/coparent, with a four-year enhancement for great bodily injury (§§ 273.5, subd. (a), 12022.7, subd. (e)), and sentencing defendant to one year (one-third the middle term) on count 6 for assault likely to cause great bodily injury (§ 245, subd. (a)(4)) and one year (one-third the middle term) on count 8 for injury to a cohabitant/coparent (§ 273.5, subd. (a)).

Defendant's total aggregate sentence was an indeterminate term of 64 years to life, composed of two terms of seven years to life for attempted murder (§§ 187/664; counts 1 and 2) with two enhancements of 25 years to life for intentional discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)), plus a determinate term of 14 years, composed of nine years on counts 6, 8 and 12, eight months (one-third the middle term) for criminal threats (§ 422; count 7), two terms of one year four months (one-third the middle term) for child abuse (§ 273a, subd. (a); counts 11 and 12), and one year eight months (one-third the middle term) for arson of an inhabited structure (§ 451, subd. (b); count 13). The trial court credited defendant for time served on two counts of misdemeanor resisting arrest (§ 148; counts 14 and 15) and stayed sentences on all remaining counts and suspended sentences on all other enhancements.

## DISCUSSION

Defendant contends the trial court erred by imposing multiple punishments on the crimes charged in counts 2, 6, 8, and 12, during which he asserts he shared a single intent and objective, i.e., to kill V.O. Specifically, defendant argues that his acts were not sufficiently independent to give him time to pause and reflect. He contends the acts in the townhouse charged in counts 6, 8, and 12 occurred in quick succession, and while his attempted murder of V.O. charged in count 2 was separated in time, there was no interruption in his assaultive conduct during which he could pause to reflect. We disagree.

Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such

7

provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)

The reference in section 654 to an "act or omission" embraces both a discrete physical act and a course of conduct encompassing several acts pursued with the same objective.  (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)  We apply a two-step inquiry to determine if section 654 bars multiple punishments.  (*Ibid.*)  In step one, if the defendant completed the crimes by a " 'single physical act,' " he cannot be punished more than once for the act.  (*Ibid*.)  In step two, where the case involves more than a single act—in other words, a course of conduct—we "consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives."  (*Ibid.*)  Here, defendant does not contend that more than one physical act was involved in counts 2, 6, 8, and 12.  Defendant asserts rather that the acts charged in these counts constituted an uninterrupted course of conduct with no time for him to pause and reflect.  Thus, we proceed to analyze step two.

In step two, the defendant's intent and objective determines " '[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 . . . .' "  (*People v. Correa* (2012) 54 Cal.4th 331, 336.)  If the defendant maintains a single objective over multiple offenses, he can be punished for only one of those offenses.  (*Ibid.*)  However, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment."  (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11; see also *People v. Louie* (2012) 203 Cal.App.4th 388, 399.)  The proximity in time between the offenses is not necessarily determinative of whether multiple punishments are prohibited.  (*People v. Jackson* (2016) 1 Cal.5th 269, 354; *People v. Trotter* (1992) 7 Cal.App.4th 363, 366-368 [two assaults on the same victim one minute apart may be punished separately].)  Accordingly, to determine whether criminal offenses may be temporally divisible, courts consider whether the defendant had "opportunity to reflect and to renew his or her intent

before committing the next [offense] . . . .” (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935; see also *People v. Lopez* (2011) 198 Cal.App.4th 698, 717 [“ ‘multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm’ ”]; *People v. Kelly* (2016) 245 Cal.App.4th 1119, 1136 [“[I]f a series of acts are committed within a period of time during which reflection was possible [citation], section 654 does not apply”].)

Whether the defendant engaged in separate crimes involving separate objectives, or an indivisible course of conduct pursuant to a single objective, is a question of fact for the trial court. (*People v. Brents* (2012) 53 Cal.4th 599, 618.) If the court makes no express findings, as apparently occurred here, “a finding that the crimes were divisible is implicit in the judgment and must be upheld if supported by substantial evidence.” (*People v. Lopez, supra,* 198 Cal.App.4th at p. 717.) The trial court’s findings of separate intents are reviewed “ ‘in a light most favorable to the judgment,’ ” meaning we “ ‘presume in support of the court’s conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence.’ ” (*People v. Andra* (2007) 156 Cal.App.4th 638, 640-641.)

In this instance, assuming defendant had the same intent to kill throughout as defendant claims, substantial evidence supports the trial court’s imposition of separate sentences on counts 2, 6, 8, and 12. There can be no real question that the evidence showed defendant had time to reflect and renew his intent to kill V.O. when he returned to T.W.’s home with a military-style rifle and shot V.O., the factual basis for the attempted murder charged in count 2. Defendant chased V.O. to T.W.’s townhouse to continue beating V.O., defendant was beaten in a fight with G.B., and said, “stop, I’m done,” before G.B. let defendant get up and return to his place. Not only did defendant have ample time to reflect and renew his intent to kill before attempting to murder V.O., but also defendant’s statement that he was giving up followed by his actions in returning

9

armed to T.W.'s home to shoot V.O. can only be interpreted as involving reflection and renewed intent.

The actions on which counts 6, 8, and 12 are based occurred within a short space of time but in different locations in the townhouse, and involved defendant forcing V.O. to move from one location to another while he escalated the level of violence and risk of harm to V.O. The evidence showed that defendant punched V.O. in the face somewhere between the front door and the kitchen when she heard her cell phone beep and defendant got to the phone before her. After punching V.O., defendant had time to reflect and cease the assault, but instead dragged V.O. by the neck into the kitchen where he slammed her head on the kitchen counter. Again, defendant had time to reflect and end the attack at this point, but defendant dragged V.O. to the stairs where she tried to escape but he pushed her head between the railings and kicked her in the back of the neck.

Accordingly, substantial evidence supports findings that defendant shooting V.O. in T.W.'s townhouse, punching V.O. in the living room in the townhouse she shared with defendant, then slamming her head on the counter in the kitchen, and kicking her neck on the stairs were part of a divisible course of conduct allowing for multiple punishments.

DISPOSITION

The judgment is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
DUARTE, Acting P. J.

/s/
MESIWALA, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11