Filed 7/17/24  P. v. Jimenez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D081746 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE410943) |
| RAUL MARTINEZ JIMENEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Polly H. Shamoon, Judge.  Affirmed in part; reversed in part; remanded with directions.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel, and Anne Spitzberg, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Raul Martinez Jimenez of possession of a firearm in a school zone (Pen. Code,[1] § 626.9; count 1); two counts of assault with a firearm (§ 245, subd. (a)(2); counts 2 and 4); child abuse (§ 273a, subd. (a); count 3); making a criminal threat (§ 422; count 5); possession by a felon (§ 29800, subd. (a)(1); count 6); unlawfully carrying a loaded firearm in a vehicle while in a public place (§ 25850, subd. (a); count 7); and evading an officer with reckless driving (Veh. Code, § 2800.2, subd. (a); count 8). The jury also found true as to count 2 that the victim was a person defined in Family Code section 6211 and within the meaning of Penal Code section 1203.097, subdivision (a). Regarding count 5, the jury found true that Jimenez personally used a firearm (§ 12022.5, subd.(a)) and was armed with a firearm (§ 12022, subd. (a)(1)). Concerning count 7, the jury found true that Jimenez previously had been convicted of a felony (§ 25850, subd. (c)).

The court sentenced Jimenez to prison for a total of 10 years.

Jimenez appeals, raising two primary issues. First, he argues the case must be remanded to clarify certain inconsistencies between the court's oral pronouncement of the sentence and the abstract of judgment. Second, Jimenez contends the court erred by failing to stay the sentences for counts 4, 6, and 7 under section 654.

The People concede and we agree that the trial court erred in failing to stay Jimenez's sentence for count 4. The People also acknowledge that counts 6 and 7 are based on a single act. They ask us to stay the sentence on count 7; however, it is within the trial court's discretion to determine whether to stay Jimenez's sentence for count 6 or count 7. We cannot make that determination on appeal. In addition, on a point not raised by Jimenez, the People note that the trial court improperly sentenced Jimenez under both

---

[1] Statutory references are to the Penal Code unless otherwise specified.

2

section 12022.5, subdivision (a) and section 12022, subdivision (a)(1). Thus, the concurrent one-year enhancement under section 12022 should be stayed under section 654 as well. Accordingly, we reverse the judgment and remand the matter to the superior court for resentencing consistent with this opinion. In all other respects, the judgment is affirmed.

## FACTUAL BACKGROUND[2]

The victims lived with Jimenez in a large RV. Jimenez, a convicted felon, owned a small revolver that he kept in the RV. On the night of February 1, 2022, Jimenez became angry and choked his 16-year-old daughter, A.J., in the car while driving home from a 99 Cent store.

When they got home, Jimenez threatened to kill 18-year-old L.C., who is A.J.'s boyfriend. Jimenez was holding his revolver at the time of the threat. Jimenez pointed the gun at L.C.'s head and pushed L.C.'s head with the gun. Jimenez also put the gun to his 12-year old daughter's head.

The next morning, A.J., L.C., and a friend left the RV to take A.J. to her high school. On the way, A.J. got a call from Jimenez who sounded angry because someone had called Child Protective Services (CPS) about the previous night's events. A.J. became afraid for her younger siblings because they were at their elementary school and she feared Jimenez would pick them up and harm them. A.J. called family members for help, who then called CPS, the elementary school, and the police. In response, the elementary school was placed on lock down.

---

[2]    Because the facts of each of Jimenez's offenses are not pertinent to the issues to be resolved, we provide a brief overview of the underlying facts taken largely from the People's brief, which presents an accurate and concise summary of the salient facts. To the extent we need to discuss additional facts, we shall do so while considering the issues raised.

Sheriff's deputies arrived at the elementary school anticipating Jimenez's arrival. Jimenez showed up and saw multiple sheriff's deputies and police cars. Jimenez immediately sped away and led the deputies on a high-speed chase through residential streets. Jimenez finally crashed into another car and sheriff's deputies were able to take him into custody.

A search of Jimenez's car revealed that he had his revolver with him, within arm's reach, and it was loaded with five rounds of ammunition. An additional bullet was found underneath the gun.

DISCUSSION

I

SECTION 654

A.    *Jimenez's Contentions*

Jimenez argues that the court was required to stay the sentences under counts 4, 6, and 7 pursuant to section 654. The People correctly concede that the sentence on count 4 should have been stayed under section 654. However, the People disagree that the sentences for both counts 6 and 7 should be stayed. Rather, they maintain that those two counts are based on the same act, and thus, we should modify the judgment to stay the sentence as to count 7. Although we agree with the People that counts 6 and 7 are based on a single act, it is well within the trial court's purview to determine which sentence to stay. It is not our role to make that selection on appeal. Therefore, we must remand this matter for resentencing consistent with this opinion.[3]

---

[3]    Jimenez's first argument on appeal is that we must remand the matter to the superior court to correct inconsistencies between the oral pronouncement of Jimenez's sentence and the abstract of judgment. Because we are remanding the matter back for resentencing on the section 654 issue, we conclude that Jimenez's first argument is moot.

4

B.    *Background*

1.    The Oral Pronouncement of Jimenez's Sentence

The court sentenced Jimenez to prison for 10 years. In calculating the 10-year term, the court began by selecting count 5 as the principal count. The court explained:

> "As to count five, the Court is selecting the middle term of two years. Two years state prison will be ordered in that case with the middle term of four years on the [section] 12022.5 [enhancement]. That is a total of six years with one year consecutive for the [section] 12022[,] [subdivision] (a)(1) [enhancement]. In that count alone, it's a total of six years. That's a state prison commit."

The court added consecutive one-third the middle-term sentences on both counts 1 and 2, which equaled one year for each of those counts. Thus, the sentence was increased to eight years.

For count 3, the court sentenced Jimenez to one-third the middle-term of four years, which added another one year four months to the sentence. And regarding count 8, the court selected one-third the middle-term of two years for an additional eight months. The eight months added to the year four month sentence on count 3 added two more years to Jimenez's sentence for a total of 10 years.

Concerning count 4, the court imposed a sentence of three years to run concurrently. For counts 6 and 7, the court sentenced Jimenez to two years for each count to be served concurrently to the 10-year sentence as well.

2.    Counts 4 and 5

On February 3, 2022, one day after the charged crimes occurred, a forensic social worker interviewed Jimenez's 16-year-old daughter, A.J. A.J. told the social worker that Jimenez got his gun, pointed it at L.C.'s head and said, "if you snitch, I'll kill you" and then "was going like this, like that.

5

My boyfriend's head was going like that." A.J. told Jimenez to leave L.C. alone.

The video recording of that interview was played for the jury and in that video, A.J. demonstrated how Jimenez placed his gun against L.C.'s head after threatening to kill L.C. The prosecutor asked A.J. if L.C. said or did anything "when [Jimenez] came to him and held the gun to his head and pushed his head to the side with the gun?" and A.J. said she did not remember. A.J. also said she did not remember if L.C. said or did anything when Jimenez pointed the gun at L.C. and told him, "[i]f you snitch I'll kill you." When she testified, A.J. recanted portions of her prior statements to the social worker and police officer.

During closing argument, the prosecutor mentioned that A.J. demonstrated how Jimenez held the gun to the side of L.C.'s head and pushed his head "physically to the side using the gun" in a video-recorded forensic interview. The prosecutor argued that this act fulfilled the elements for count 4 (assault with a firearm). The prosecutor later argued that Jimenez's threats to kill L.C. if he snitched, while holding the gun, fulfilled the elements for count 5, criminal threats, while personally using a firearm.

At the sentencing hearing, defense counsel argued that the assault with a firearm term should be stayed pursuant to section 654 because it was a single event along with the criminal threats. The prosecutor disagreed and argued that Jimenez's acts were divisible because he first entered with the gun and threatened to kill L.C. and then, after having an opportunity to stop and leave, decided to walk toward L.C., put the gun to his head and pushed his head to the side. The trial court did not address the section 654 argument but imposed concurrent terms for counts 4 and 5.

6

### 3. Counts 1, 6, 7

On the morning of February 2, 2022, A.J. called her family members for help after Jimenez said he had a gun with him and wanted to kill "them" because of someone calling CPS. CPS called and warned the elementary school where Jimenez's younger two children attended, and the school principal called 911. Because Jimenez had a gun, the school went into lockdown; all students were evacuated from the playground into safe areas. Multiple sheriff's deputies arrived at the school. Deputy Daniel Nevitt saw Jimenez driving into the school and made eye contact with Jimenez. Jimenez sped up and drove past the deputies and the school. The deputies got into their patrol cars and chased Jimenez. Jimenez was eventually apprehended and a search of his car revealed a loaded revolver within arm's reach of the driver's seat.

At the February 17, 2023 sentencing hearing, the trial court imposed a one-year sentence on count 1 (possession of a firearm in a school zone) and imposed concurrent sentences on counts 6 (possession of a firearm by a felon) and 7 (unlawfully carrying a loaded firearm in a vehicle while in public).

### C. *Pertinent Law*

The purpose of section 654 is to ensure a defendant is punished " 'commensurate with his [or her] culpability.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) The defendant's intent and objective, not the temporal proximity of his offenses, determines whether multiple punishment is permissible. (*Ibid.*) When section 654 prohibits multiple punishments, the trial court must stay execution of sentence on the

convictions that implicate multiple punishments. (*People v. Correa* (2012) 54 Cal.4th 331, 337.)[4]

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives. [Citations.] At step one, courts examine the facts of the case to determine whether multiple convictions are based upon a single physical act. [Citation.] When those facts are undisputed . . . the application of section 654 raises a question of law we review de novo." (*People v. Corpening* (2016) 2 Cal.5th 307, 311–312.)

If the pertinent facts are in dispute, "[i]ntent and objective are factual questions for the trial court, which must find evidence to support the existence of a separate intent and objective for each sentenced offense." (*People v. Jackson* (2016) 1 Cal.5th 269, 354.) Where the trial court does not make an explicit ruling, "we infer that the court made the finding appropriate to the sentence it imposed, i.e., either applying section 654 or not applying it." (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1045.) Ultimately, the court's

---

4     It is error for a trial court to impose even a concurrent sentence, such as the sentences imposed here, if section 654 prohibits multiple punishments, despite that there is little practical difference between a concurrent sentence and a sentence that is stayed. (*People v. Jones* (2012) 54 Cal.4th 350, 353 (*Jones*).)

implicit or express determination in that respect will be upheld on appeal if supported by substantial evidence. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717.) In this regard, we must " ' "presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence." ' " (*Ibid.*)

D.    *Analysis*

    1.    Counts 4 and 5

Jimenez contends, and the People concede, that counts 4 (assault with a firearm) and 5 (making a criminal threat) are based on a single course of action and thus the sentence under count 4 should be stayed. We agree.

As the People point out, Jimenez threatened to kill L.C. while holding the gun before leaving the room. A.J.'s description of these events was too vague and brief to determine whether Jimenez completed two separate acts, one for threatening L.C. while brandishing a gun and the other for pushing L.C.'s head with the barrel of the gun, or one continuous act of threatening L.C. with the gun and its use as incidental to the threat. A.J.'s statement could be interpreted as describing acts that happened in immediate succession with no meaningful temporal separation such that Jimenez had no opportunity to reflect and renew his intent. Thus, on this record, we conclude that Jimenez's sentence for count 4 should have been stayed under section 654.

    2.    Counts 1, 6, 7

Relying on *Jones*, *supra*, 54 Cal.4th 350, Jimenez argues that the sentences on counts 6 (possession of a firearm by a felon) and count 7 (carrying a loaded firearm in a vehicle while in a public place) must be stayed under section 654 because those two counts "were alleged to have occurred on February 2, 2022." Thus, Jimenez implies that counts 6 and 7 are based on

9

the same act that gave rise to count 1 (possession of a firearm in school zone). Jimenez's reliance on *Jones* is misplaced.

In *Jones*, the California Supreme Court considered whether the defendant could be "punished separately for the crimes of possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public." (*Jones*, *supra*, 54 Cal.4th at p. 352.) The defendant had been found with a loaded .38–caliber revolver in his car and the gun was not registered to him. (*Ibid*.) The defendant had purchased the gun three days earlier " 'for protection,' " and he had kept the gun at his grandmother's house before that day. (*Ibid*.) The court determined that under the circumstances, the defendant had committed "a single act" that could only be punished once. (*Id.* at p. 360.)

Our high court noted that the defendant's "guilt on all three charges was premised solely on his having the gun in his car when arrested" and that "the jury convicted defendant of each crime due to his being caught with the gun in the car on [the day of his arrest], not due to any antecedent possession." (*Jones*, *supra*, 54 Cal.4th at p. 359.) The court declined to express an opinion "on what the outcome might be under other facts" and did not decide whether "keeping the gun at the house and carrying it in the car were separate acts." (*Ibid*.)

The instant action is factually distinguishable from *Jones*. The act that led to Jimenez's possession of a firearm in a school zone (count 1) occurred earlier in the day and in a different location than the act underlying his conviction for felon in possession of a firearm (count 6) and possession of a loaded firearm in a vehicle (count 7), which occurred after Jimenez attempted to evade pursuing patrol cars and crashed his car. Further, during closing

10

argument, the prosecutor emphasized that counts 6 and 7 were based on different conduct than count 1. Therefore, unlike the defendant in *Jones*, the record here does not support the conclusion that counts 1, 6 and 7 were based on a single act.

Additionally, Jimenez does not argue that counts 1, 6, and 7 are part of a single objective. Nor could he persuasively do so. Count 1 is based on Jimenez's possession a firearm in a school zone. When he arrived in the school zone with his firearm, the crime was completed. He then tried to evade law enforcement, a separate objective than traveling to a school zone, and crashed his car. Upon inspection of the vehicle, the firearm was discovered. Accordingly, we conclude that counts 6 and 7 should not have been stayed under section 654 based on count 1.

That said, counts 6 and 7 are based on a single act. Thus, one of the sentences associated with those two counts must be stayed. (See *Jones*, *supra*, 54 Cal.4th at p. 359.) On remand, we offer no opinion as to which sentence should be stayed.

3.    The Firearm Enhancements

Regarding count 5, the trial court imposed a sentence under both firearm enhancements—the four-year enhancement under section 12022.5, subdivision (a) and the one-year enhancement under 12022, subdivision (a)(1). Although not raised by Jimenez, the People point out that the court had to stay one of those sentences under section 12022.53, subdivision (f). We agree.

Section 12022.53, subdivision (f) provides:

> "Only one additional term of imprisonment under this section shall be imposed per person for each crime. If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of

11

imprisonment. An enhancement involving a firearm specified in Section 12021.5, 12022, 12022.3, 12022.4, 12022.5, or 12022.55 shall not be imposed on a person in addition to an enhancement imposed pursuant to this section. An enhancement for great bodily injury as defined in Section 12022.7, 12022.8, or 12022.9 shall not be imposed on a person in addition to an enhancement imposed pursuant to subdivision (d)."

Thus, under this subdivision, the trial court was required to stay the one-year enhancement under 12022, subdivision (a)(1). (See *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126–1130 [the word "impose" in section 12022.53, subdivision (f) means that the prohibited enhancements must be "imposed and then stayed"].) It was error not to do so. Accordingly, the trial court can correct this issue on remand.

## DISPOSITION

The judgment is reversed and remanded for resentencing consistent with this opinion. In all other respects, the judgment is affirmed. After resentencing Jimenez, the superior court shall forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.


HUFFMAN, Acting P. J.

WE CONCUR:


BUCHANAN, J.


KELETY, J.

12