Filed 12/6/24  P. v. Littlejohn CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MAURICE DWIGHT LITTLEJOHN,<br><br>  Defendant and Appellant. | D082357<br><br><br>(Super. Ct. No. SCE413231) |

APPEAL from a judgment of the Superior Court of San Diego County, Steven E. Stone, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Evan Stele, Deputy Attorneys General, for Plaintiff and Respondent.

After Maurice Dwight Littlejohn stabbed M.J., a jury convicted Littlejohn of attempted murder (Pen. Code, §§ 664, 187, subd. (a); count 1) and assault with a deadly weapon (§ 245(a)(1); count 2), and it also found

true related allegations. The court sentenced Littlejohn to an aggregate prison term of 23 years. He appeals on two issues.

First, Littlejohn contends his conviction must be reversed because the evidence was inadequate to show he (1) was the person who stabbed M.J. (for both counts) and (2) harbored a specific intent to kill (for count 1). We disagree. Viewing the evidence in the light most favorable to the judgment, as we must, substantial evidence—including statements from Littlejohn's mother and evidence identifying his vehicle as the one that fled the crime scene—established Littlejohn was the stabber. Moreover, substantial evidence—including the placement and severity of M.J.'s wounds and statements from Littlejohn and his mother establishing motive—supported finding Littlejohn intended to kill M.J.

Second, Littlejohn argues the trial court abused its discretion in admitting the video of his arrest under Evidence Code section 352. We conclude the trial court made a reasoned and sound determination that any prejudice did not substantially outweigh the probative value of this evidence, which was relevant under section 1101(b) to establish Littlejohn's consciousness of guilt and thus his identity as the stabber. We further conclude it is not reasonably probable Littlejohn would have obtained a more favorable outcome had the video not been admitted.

Accordingly, we affirm the judgment.

I.

A.

One afternoon in 2022, M.J. and his then-girlfriend Cookie—the mother of Littlejohn's children—went to Littlejohn's mother's apartment. Littlejohn lived with his mother. He and his then-girlfriend, now his wife, were in his bedroom. Another male was present, too.

2

Littlejohn and M.J. "ha[d] some words."  Abruptly, someone stabbed M.J.'s left chest.  M.J. picked up an object to defend himself and hit someone.  While trying to block another stab "to [his] heart," M.J.'s arm was stabbed.  He ran outside.  In the parking lot, he smashed a black SUV's window with the object—"[p]ossibly to slow somebody down," M.J. later said.

M.J. fell to the ground and told Cookie he thought he was dying.

## B.

Littlejohn's mother called 9-1-1.  While on the line, she said, "Oh my God.  Oh my God.  You done did it.  You done did," followed by, "Look what you done did, [Littlejohn]!"  She later said, "I'm telling you, [Littlejohn] . . . .  They going to come."

A neighbor also called 9-1-1.  She told the dispatcher, "They're saying they're gonna kill someone."  She also saw a Black man in a white tank top holding a metal object smash a car window.

## C.

Law enforcement officers responding to a call for someone "bleeding out" found M.J. wearing a bloody white tank top and lying in a pool of blood.

Tracing a blood trail, officers found part of a gold candlestick.  They found another part in the parking lot surrounded by broken glass consistent with a car window.  The trail led to Littlejohn's mother's apartment.

Inside, officers found an intact candlestick matching the pieces as well as what appeared to be the base of the broken candlestick.  There was blood on the floor, the walls, and the couch.

## D.

Officers spoke with Littlejohn's mother that day.  She affirmed the only person M.J. was fighting with when he was stabbed was Littlejohn, and so "the only way he could have been stabbed was from" Littlejohn.  She

3

admitted seeing Littlejohn holding a knife. She said she was "hollering please, . . . don't do it."

Officers also spoke with the neighbor. She told them she "picked up the phone" to dial 9-1-1 because "a large [B]lack female just kept screaming. He's gonna kill us." She saw a Black man wearing a white tank top exit the apartment holding a "metal bar" he used to smash a car window.

Officers obtained surveillance video from a nearby store showing a black SUV exiting the apartment parking lot around the time of the stabbing.

E.

Roughly a week later, law enforcement responded to a disturbance at Littlejohn's wife's apartment complex. The jury was shown body-worn camera footage of Littlejohn's arrest for both the stabbing and a newly alleged offense. This court obtained the video from the superior court.

In the video, Littlejohn is standing in the parking lot holding a cane. Officers tell him to drop it, and he eventually complies but backs away. He then pulls a knife, takes a fighting stance, and tells officers to "[s]hoot [him]." An officer tases Littlejohn, he drops the knife, and officers arrest him.

At the scene was a black SUV, with a broken rear passenger window. Documents containing Littlejohn's identifying information were found inside, as was a knife and glass consistent with that found the day of the stabbing. According to Littlejohn's wife, the window was intact when they arrived at the apartment the day of the stabbing. Swabs of bloodstains from the interior driver's side door indicated "very strong support" the blood was Littlejohn's, and the swab from the interior rear passenger's side door indicated "very strong support" the blood was M.J.'s.

4

F.

While discussing the day of the stabbing in a recorded jail call, Littlejohn's mother described the relationship between Littlejohn, M.J., and Cookie as "a triangle." She said M.J. commented on how Cookie "won't get out of [Littlejohn's] room, . . . and she keeps going to bed with" him. Littlejohn expressed frustration at having to "stay[ ] in the room at my own home" and said he was "not going [to] be disrespected at . . . all."

After the arrest, M.J. told law enforcement he was stabbed by "DBrazy" who was Cookie's "baby daddy." When given a lineup of photographs including Littlejohn, M.J. did not identify him as the perpetrator, whom he described as having a different appearance from Littlejohn's.

G.

At trial, M.J. claimed not to see his attacker present. He agreed he would "like to avoid . . . hav[ing his] name on paperwork," which a detective explained meant arrest reports and police contact reports. The detective stated it was "bad" to have your name on paperwork because it shows "you're snitching."

Littlejohn's mother testified she did not remember what happened. Although she had a stroke shortly before the trial and had consumed intoxicants the day of the stabbing, the court found she was being "deliberately evasive."

The neighbor testified she saw Littlejohn go back into the apartment after everyone came outside. When recalled and impeached with her statement to police, she acknowledged she did not tell officers that the day of the incident but reaffirmed seeing it.

According to M.J.'s treating surgeon, one of M.J.'s three stab wounds was a "penetrating wound to his left chest" that caused dangerous pressure

5

"that could have caused death pretty rapidly" if untreated. M.J. also had to be intubated due to hypoxic respiratory failure. The surgeon testified the stabbing instrument penetrated M.J.'s diaphragm, punctured his colon, and broke a rib. These injuries were "life-threatening" and "close to the heart."

## II.

## A.

First, Littlejohn contends insufficient evidence supported the jury's determinations that he (1) was the stabber, for purposes of both counts; and (2) had the requisite intent to kill, for count 1. We disagree.

We review claims of insufficient evidence for substantial evidence. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) In a criminal case, we review the entire record in the light most favorable to the judgment for substantial evidence that would allow any reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) To be "substantial," the "evidence must be of ponderable legal significance," "reasonable in nature, credible, and of solid value." (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644; *Zamudio*, at p. 357.) Such evidence can include not only circumstantial evidence but also all reasonable inferences drawable from such evidence. (*People v. Soriano* (2021) 65 Cal.App.5th 278, 286.) Reversal is only appropriate if "upon no hypothesis whatever is there sufficient substantial evidence to support" the conviction. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) We do not reweigh the evidence, assess witness credibility, or choose between competing inferences, as these are jury tasks. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.) We also "assume that the jury accepted that evidence which supports [its] verdict and rejected that evidence which would support a contrary verdict." (*People v. Ewing* (1961) 198 Cal.App.2d 364, 366.)

6

For both alleged insufficiencies, we agree with the People that Littlejohn relies on the evidence most favorable to him and the inferences that can be drawn from that evidence instead of the evidence and inferences supporting the guilty verdict. Yet with the evidence viewed through the appropriate lens, there is substantial evidence to support findings beyond a reasonable doubt that Littlejohn (1) stabbed M.J. and (2) did so with the specific intent to kill.

As the People contend, there is substantial evidence Littlejohn was the stabber. In her 9-1-1 call, Littlejohn's mother exclaimed, "Look what you done did, [Littlejohn]!" A jury could reasonably infer this was a reference to the stabbing. In her statement the day of the stabbing, Littlejohn's mother told officers she saw Littlejohn holding a knife and agreed "the only way [M.J.] could have been stabbed was from [Littlejohn]." Additionally, Littlejohn's vehicle's appearance and condition matched the one that left the scene and had his and M.J.'s blood inside it. Although Littlejohn claims other inferences "could have just as reasonably been" made from the evidence—for example, that Littlejohn's mother's exclamations during the 9-1-1 call could have "been her reference to the blood being tracked in her apartment"—that is irrelevant given our deferential review. The above is substantial evidence sufficiently credible to support a jury finding beyond a reasonable doubt that Littlejohn stabbed M.J. (See *People v. Jones* (2013) 57 Cal.4th 899, 963 [single witness' testimony can support conviction].)

We also agree with the People that there is substantial evidence Littlejohn intended to kill M.J. "Attempted murder requires the specific intent to kill." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) "A specific intent to kill requires express malice." (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 456.) Express malice "may in many cases be inferred from the

7

defendant's acts and the circumstances of the crime." (*People v. Smith* (2005) 37 Cal.4th 733, 741.)  The purposeful "use of a lethal weapon with lethal force" allows "an intent to kill [to] be inferred." (*People v. Arias* (1996) 13 Cal.4th 92, 162.)  Further, "evidence of motive is often probative of intent to kill." (*Smith,* at p. 741.)

Here, M.J.'s stab wounds were, according to responding law enforcement and the treating surgeon, "life-threatening."  The multiple wounds were on M.J.'s left side, "fairly close to the heart," and could have killed him if left untreated.  Littlejohn claims "[t]he stabbing was not directed to either" M.J.'s "heart or neck," which is where someone "intend[ing] to cause death" would have stabbed.  But the stab wounds *were* aimed at the area of the chest where the heart sits, and "the fact that the victim may have escaped death because of the [perpetrator]'s poor" aim does not "necessarily establish a less culpable state of mind." (*People v. Lashley* (1991) 1 Cal.App.4th 938, 945.)  While M.J. later picked up a candlestick to defend himself, Littlejohn concedes the first stab to M.J.'s chest was while he was unarmed.  "In plunging the knife so deeply into such a vital area of the body of an apparently unsuspecting and defenseless victim, defendant could have had no other intent than to kill." (*People v. Bolden* (2002) 29 Cal.4th 515, 561.)  This evidence of intent is bolstered by the motive revealed during the call between Littlejohn and his mother: he (1) was in an alleged love triangle with Cookie and M.J. and (2) felt "disrespected" by M.J.'s presence, which made him feel like he had to stay in his own room in his own home. Regardless of who may have been the aggressor, this evidence—which is not, as Littlejohn claims, "only speculation and conjecture"—could lead a reasonable trier of fact to conclude beyond a reasonable doubt that Littlejohn specifically intended to kill M.J.

8

In sum, substantial evidence supported Littlejohn's convictions. Accordingly, we need not decide whether the alleged lack of substantial evidence violates Littlejohn's constitutional right to due process.

B.

Second, Littlejohn argues the trial court abused its discretion under Evidence Code section 352 in admitting the video of his arrest under section 1101(b) as relevant to prove identity and consciousness of guilt. He claims the probative value of this evidence was substantially outweighed by its potential for undue prejudice.[1] Again, we disagree.

1.

Evidence of a person's character is generally inadmissible to prove the person's propensity to commit a crime, but such evidence is admissible "when relevant to prove some [other] fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident)." (§ 1101(b).) Even so, a court may exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice." (§ 352.) Prejudice "is not synonymous with 'damaging,' but refers instead to evidence that uniquely tends to evoke an emotional bias against [a] defendant without regard to its relevance on material issues." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121, [cleaned up].)

---

[1] To the extent Littlejohn suggests in passing the evidence was erroneously admitted without reference to section 352, he fails to develop the argument or support it with citations to the record and appropriate legal authority; we accordingly deem this point forfeited. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 333, fn. 11.) We thus do not decide if the evidence was properly found admissible under section 1101(b).

9

We deferentially review a trial court's section 352 ruling for abuse of discretion. (*Kipp*, 26 Cal.4th at p. 1121.) It is the defendant's burden to show "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390, [cleaned up].)

2.

Before trial, Littlejohn moved to exclude body-worn camera footage of his arrest. That day, law enforcement was called to the scene for a different potential crime Littlejohn committed, but he was arrested for both offenses.

Relevant here, the People argued the video was admissible under section 1101(b) to prove both (1) Littlejohn's identity as the stabber, given his location at his girlfriend's home rather than the home he usually shared with his mother, his carrying of a pocketknife, and his possession of a car with a broken window and inculpatory evidence matching the vehicle seen fleeing the scene of the stabbing; and (2) his consciousness of guilt, as shown by Littlejohn's action of backing away from officers, assuming a fighting stance, brandishing a knife, and telling officers to shoot him. The People were "not really seeking" to admit into evidence the portion of the video after Littlejohn drops the knife—in which he flees on foot and an officer-involved shooting ensues—conceding it "might be too prejudicial."

Littlejohn's counsel argued the evidence was "substantially more prejudicial than probative." Counsel claimed the People could get "everything" they "want[ed] to get into evidence . . . without playing the body-worn camera footage and without getting into" Littlejohn's arrest. Meanwhile, the jury was likely to improperly infer propensity, because "if he's willing to pull a knife on these officers . . . , he must have been the one to pull the knife on" M.J.

The court admitted the evidence, finding (1) it "directly related to identity for the reasons the People state" and (2) "[i]dentity seems to be what this case is about." The court also found the evidence "admissible to some extent for consciousness of guilt . . . subject to further objection." As to section 352, the court excluded the part of the video "after that tasing," but it found the rest of the video "would not create a substantial danger of undue prejudice in this case."

3.

We agree with the People that the trial court did not abuse its discretion in finding the probative value of the arrest video not substantially outweighed by the danger of undue prejudice.

The trial court's section 352 analysis was not, as Littlejohn contends, "flawed." The list of factors Littlejohn claims the trial court should have applied in its section 352 analysis are drawn from section 1108 cases involving propensity to commit sexual offenses; they are thus of limited relevance here. (Citing *People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1116-1117.) "The weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)

Here, the trial court was aware of and properly exercised its duty to weigh the relative probative value of the proffered evidence against the likelihood of undue prejudice. It concluded the footage of Littlejohn's flight and engagement in an officer-involved shooting was unduly prejudicial, but it determined the remainder was relevant and not unduly prejudicial. On this record, we cannot say this determination went beyond all reason.

11

We find support in *People v. Garcia* (2008) 168 Cal.App.4th 261, a prior decision of this court on which the People rely. In *Garcia*, the trial court admitted evidence, including officer testimony and an audio recording of the defendant's telephone conversation with a police negotiator, of the defendant's arrest following a SWAT standoff about six weeks after the at-issue shooting incident. (*Id.* at p. 283.) The jury was unaware the defendant was wanted for two other shootings. (*Id.* at pp. 272, 284.) According to the defendant, (1) given the multiple incidents, the inference of consciousness of guilt for the charged offenses was "likely false" and "'exaggerated'"; and (2) the jury likely used the evidence to improperly infer propensity. (*Id.* at p. 284.) We found no abuse of discretion because "[e]vidence of a defendant's resistance to arrest, like evidence of flight, is admissible as evidence of the defendant's consciousness of guilt," and "a defendant who has committed multiple offenses should not enjoy the benefit of the exclusion of relevant incriminating evidence that would be admissible against a 'neophyte' who has committed only one." (*Id.* at pp. 283, 286.)

Littlejohn concedes *Garcia* "is on point" for his claim "the court knew— but the jury did not—that his reaction to the police encounter could be the result of another incident and not any consciousness of guilt as to the [M.J.] incident." Although Littlejohn claims *Garcia* is "not dispositive" of his remaining section 352 arguments, on this record, we conclude the probative value of the arrest video was not *substantially* outweighed by *undue* prejudice.

Here, identity was a highly contested issue, and the evidence of Littlejohn's resisting arrest "was probative of [his] consciousness of guilt, which in turn was probative of his identity as the perpetrator of the charged offenses." (*People v. Harrison* (2005) 35 Cal.4th 208, 230.) Our high court

does not require the other act to share distinctive features with the charged offense when the evidence supports identity in this circumstantial manner. (See *id.* at pp. 228-230.) Thus, whether there were "parallels" here beyond the fact "a knife was involved" is not determinative of the evidence's relevance. We further agree with the People that the video was no more inflammatory—and certainly not significantly and unduly more so—than the attempted murder with which Littlejohn was charged. Balancing the evidence's probative value against the low likelihood of undue prejudice, section 352 was not violated here. We deem forfeited Littlejohn's undeveloped claim that the arrest video "was likely to confuse or distract the jurors from the specific evidence of the charged incident." (*Verdugo*, 44 Cal.App.5th at p. 333, fn. 11.)

Given the above, we perceive no abuse of discretion in admitting the video.

4.

Even assuming error, it was harmless. We disagree with Littlejohn's claim that any error in admitting the evidence violated his right to due process and rendered the trial fundamentally unfair. Accordingly, the relevant inquiry is whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) It was not.

"[J]urors are presumed to understand and follow the court's instructions." (*People v. Holt* (1997) 15 Cal.4th 619, 662.) Here, the jury was instructed with CALCRIM No. 375, which states the jury may, but need not, consider other acts evidence—if proven by a preponderance of the evidence— "for the limited purpose of deciding whether . . . [t]he defendant was the person who committed the offenses alleged in this case. Do not consider this

13

evidence for any other purpose." The jury was further cautioned that the evidence was "not sufficient by itself to prove" Littlejohn's guilt and that "[t]he People must still prove each charge and allegation beyond a reasonable doubt." Given these instructions, there is no reasonable probability the jury convicted Littlejohn based on the arrest footage on its own.

Nor did the evidence "unfairly bolster[ ] the prosecution's case." The People's case was strong, and the evidence of Littlejohn's guilt, detailed above, overwhelmingly supported the jury's verdict even without the arrest video. Over the course of the People's 35-minute closing argument, the People twice referenced the video or what it depicts. The first time, the prosecutor spent seven sentences describing the video to "note this isn't the only pocketknife [Littlejohn] had that day." The second time was a passing reference during a longer summary of "the evidence in the totality." The contested evidence was not the focus of the trial or the People's argument.

Accordingly, on this record, we conclude there was no reasonable probability Littlejohn would have received a more favorable outcome absent the arrest video's admission. (See *Garcia*, 168 Cal.App.4th at p. 286 [alternatively concluding that "any error in the admission of the [SWAT standoff] evidence was harmless"].)

III.

We affirm.

CASTILLO, J.

I CONCUR:


IRION, Acting P. J.

14

J. Kelety, Concurring.

Although I concur in the result, I write separately because I conclude that the trial court erred when it allowed the prosecution to admit into evidence audio and video footage from Officer Fitzgerald's body-worn camera showing Littlejohn's encounter with the police six days after the stabbing (the video). Nothing about the video was relevant. It did not show that Littlejohn acted with consciousness of guilt as to the stabbing, nor did it confirm his identity as the stabber. On the other hand, the video was prejudicial. It showed Littlejohn as unstable and defiant as he pulled a knife from his pocket, and Officer Fitzgerald clearly referenced an unrelated, uncharged assault. The alleged probative value of the video derived almost exclusively from inadmissible propensity evidence, and its negligible probative value was substantially outweighed by its prejudice.

Evidence Code section 352 gives the trial court discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice. An uncharged offense (such as the alleged assault) is only admissible if the probative value is substantial. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 715.) Such evidence may lead the jury to believe that Littlejohn was guilty of the stabbing merely because "he is a likely person to do such acts" or because his character is offensive and therefore the jury may disbelieve evidence favorable to him. (*Ibid.*)

The video is one minute and six seconds long. It begins with Littlejohn *walking towards the officer* as the officer gets out of his patrol car in the parking lot of an apartment building during daylight hours. Littlejohn is holding a long walking stick. The officer points his taser at Littlejohn and states repeatedly, "Drop the cane." Littlejohn stops walking towards the

officer when a woman approaches Littlejohn and stands next to him. The officer advises her to stand back, and she explains that Littlejohn is her husband. The officer responds that "[h]e's about to get tased if he doesn't drop the cane." While facing the officer, Littlejohn asks why he is going to "get tased." The officer tells him, "[w]e gotta call. You're hitting somebody with that. I, that's the call we got. So drop it and tell us your side of the story. Or you're gonna be under arrest."

Again, the officer tells Littlejohn to drop the cane. Still standing facing the officer, Littlejohn drops the cane at his side. The officer then tells Littlejohn to turn around. Littlejohn says, "I ain't turning around." The officer tells him "[y]ou're being detained. You understand that?" Littlejohn twice states, "I'm not being detained." When the officer says, "Yes you are," only then does Littlejohn back away from the officer. The officer follows Littlejohn and states, "Now you're under arrest." At that point, Littlejohn turns toward the officer, pulls off his ball cap, and bends his knees into a fighting stance. He quickly stands up and pulls from his sweatpants a knife.[1] He stands facing the officer, with the knife in his hand at his side, and tells the officer, "shoot me." The officer shoots Littlejohn with the taser, causing Littlejohn to scream and fall on the ground. The video ends there.

The People contend that the trial court did not err in admitting the video "because the body worn camera footage was relevant to show appellant's consciousness of guilt and was relevant circumstantial evidence of appellant's identity."

As to consciousness of guilt, the People argue that evidence of a defendant's resistance to arrest constituted evidence of consciousness of guilt.

---

[1]     The prosecution did not contend that this knife was the knife used in the charged stabbing. A different knife was found in the vehicle.

2

Yet nothing in the encounter with Officer Fitzgerald suggests that Littlejohn was conscious of guilt for any crime, and certainly not for the stabbing six days earlier. Littlejohn objected to being detained and did not follow officer commands, but lack of cooperation with the police is not the same thing as consciousness of guilt.

California Supreme Court Associate Justice Evans has noted that the fact that a person attempted to avoid police interaction generally should have limited evidentiary significance. "As numerous judges before us have recognized, many individuals — including, particularly, people of color — commonly hold a perception that engaging in any manner with police, including in seemingly casual or innocuous ways, entails a degree of risk to one's safety." (*People v. Flores* (2024) 15 Cal.5th 1032, 1053 (conc. opn. of Evans, J.).) The video showed nothing more than Littlejohn—a man of color—demonstrating his displeasure, and perhaps mistrust, of being detained by a police officer. The mere fact that he walked backwards away from the officer when told he was being detained cannot be considered evidence of consciousness of guilt.

As the majority points out, the prosecutor did not argue that the video showed consciousness of guilt, and instead pointed out that Littlejohn had a knife, and that another was subsequently discovered. The jury was instructed that the video was to be used "for the limited purpose of deciding whether . . . [t]he defendant was the person who committed the offenses alleged in this case," but considering the prosecutor's comments, that instruction suggested the video was relevant to show Littlejohn's identity only insofar as it demonstrates his propensity to carry knives.

The People argue that "the circumstances of appellant's arrest and how the police located the vehicle that fled the stabbing six days prior (with the

3

victim's blood in it) was relevant." True. However, the vehicle is not mentioned or seen in the video, and Officer Fitzgerald did not offer any testimony that might have given such context. Instead, the police contact in the video appeared to be entirely related to a report that Littlejohn had recently assaulted someone with the stick he was carrying. Notably, in arguing that any error was harmless, the People concede there was other "explicit" evidence of Littlejohn's identity and that the video "did not give the jury any independently sufficient reason to find appellant guilty."

My colleagues in the majority contend that the video was admissible to prove Littlejohn's identity, because he was present at his girlfriend's house instead of his mother's home, where the stabbing had taken place; because he was carrying a pocketknife; and because he possessed the vehicle that was involved in the events of the stabbing. I respectfully disagree. Nothing in the video gave the jury any information as to Littlejohn's location and, as noted, the vehicle is not shown or discussed. That leaves us with Littlejohn's possession of a common pocketknife, not used in the charged offense. The mere possession of a pocketknife is common to so many people that it is virtually useless to establish his identity for a stabbing in a different location six days prior. In truth, the video did nothing to contribute to the evidence as to Littlejohn's identity as the person who stabbed M.J. Other police officers testified to the circumstances of locating Littlejohn and his vehicle and establishing his identity, without the need to reference the video.

In sum, there was no real probative value to the video. The People concede as much in arguing harmless error.

On the other hand, the video was significantly prejudicial. The video showed Littlejohn acting angrily and defiantly, and pulling out a knife, in an interaction with police in connection with accusations as to an unrelated

4

assault.  In the absence of any probative value, it could only have been intended to let the jury see that Littlejohn must be a bad person, prone to carrying knives, which is an improper purpose for its admission.

Although in my view, the court erred in admitting the video, I agree with the majority's assessment that any error was harmless.  Although the key witnesses declined to identify Littlejohn as the stabber, strong circumstantial evidence makes clear that the jury would have convicted Littlejohn of stabbing the victim, even if it had not viewed the video.  Accordingly, I concur in the result.

KELETY, J.